Wachtler, J.
Both of these cases raise a common issue concerning a defendant’s right to disclosure of the identity of a police informant. In each case the informant introduced an undercover police officer to a drug seller and shortly thereafter departed from the immediate area. The undercover officer then made a purchase, left the scene, and the defendant was later arrested by other officers relying on information supplied by the undercover agent. At the trial the defendant challenged-the reliability of the undercover officer’s identification and urged *168 the court that a proper resolution of that issue required that the prosecutor be directed to reveal the identity of the informant who initially brought the parties together.
In Brown, where the sale and arrest occurred at the defendant’s apartment and the proof of identification was virtually unassailed, the court denied disclosure. In the Gog gins case, involving a sale and subsequent arrest in or around a public bar, a close identity question emerged at the trial and the Appellate Division directed that disclosure be made. We affirm in both cases.
Problems created by demand for disclosure of police undercovermen, special police agents, informant witnesses and informant tipsters divide into two categories. The first concerns the establishing of probable cause for arrest and search. As indicated in the companion decision, People v. Darden (34 N Y 2d 177), this category is in a sense procedural and reflects constitutional and policy considerations designed to inhibit unreasonable intrusions on the privacy of individuals. The second category at issue on this appeal is substantive and involves constitutional and policy considerations related to,the right to confrontation, due process, and fairness. Most important, it is related to the risk of wrongfully convicting the innocent.
For the reasons and under the circumstances set forth in. the Barden opinion we have concluded that, in the probable cause cases, the proper balance between the defendant’s rights and the competing interests of the State is achieved by granting an ex parte in-camera hearing with respect to the existence of the informer and the alleged communications from him. In the probable cause setting, there is no inflexible Federal constitutional standard of disclosure applicable in every case involving an informant (McCray v. Illinois, 386 U. S. 300, 312-314; cf. People v. Malinsky, 15 N Y 2d 86, 92-93).
When however, as in the case at bar the defendant’s guilt or innocence is at issue, the decision as to whether the informant’s identity should be disclosed must not be resolved in an ex parte proceeding.
Limiting the adversary stance in criminal prosecutions, the State is obliged to disclose to a defendant evidence and poten *169 tial witnesses possessed by or known to the prosecution which may establish his innocence (Brady v. Maryland 373 U. S. 83, 86-87; see, also, Moore v. Illinois, 408 U. S. 786, 794-795). That such evidence or knowledge may involve prosecutorial privileges of one sort or another is to no avail (Roviaro v. United States, 353 U. S. 53, 60-61). The privileges must yield to the overriding consideration of avoiding the risk of convicting the innocent, unless, of course, the prosecution should elect to abandon its case rather than allow disclosure (pp. 61, 65, n. 15).
Since this bears directly on the issues being tried in the main case, defendant’s right to the full benefit of the adversary system should not be denied, nor qualified by impairing his right by interposing the “ neutral ” Judge to assess whether the disclosure is relevant or material (cf. People v. Rosario, 9 N Y 2d 286, 290). On the other side of the coin, it may be a disservice to the prosecution also to leave that determination to the “ neutral ” Judge without the prosecution represented in in-camera proceedings.
Perhaps, most important, an in-camera examination of the witnesses, that is ex parte or without the parties represented would, in our view, arguably trifle with the constitutional right to confrontation and the right to counsel.
Nevertheless, these principles do not suggest or require that disclosure of privileged information concerning evidence or witnesses must be available for the asking. The Roviaro case {supra) makes it clear that some foundation, that is, some initial showing, must be made before privileged matter affecting the substantive issues must be disclosed, and that the issue is one to be determined in the exercise of a sound discretion by the Trial Judge (353 U. S., at p. 61, n. 9, p. 62).
Bare assertions or conclusory allegations by a defendant that a witness is needed to establish his innocence will not suffice. Instead he must show a basis in fact to establish that his demand does not have an improper motive and is not merely an angling in desperation for possible weaknesses in the prosecution’s investigation (see Roviaro v. United States, supra, pp. 53-65).
On this point the nature of the informant’s role is of some significance. Undoubtedly the strongest case for disclosure is made out when it appears that the informant was an eyewitness *170 or a participant in the alleged crime. (Roviaro v. United States, supra.) But disclosure of the informant’s identity may also be appropriate when, by introducing the parties to each other or performing some other preliminary function he may be considered to have been “ an active participant in setting the stage ”. (Gilmore v. United States, 256 F. 2d 565, 567; see, also, United States v. Roberts, 388 F. 2d 646, 647, 649; Price v. Superior Ct., 1 Cal. 3d 836.) When however he has played a marginal part by, for instance, merely furnishing a tip or some information to the police, the privilege should prevail absent an extremely strong showing of relevance. (See, e.g., Sorrentino v. United States, 163 F. 2d 627; Portemene v. United States, 221 F. 2d 582, 583-584; Gilmore v. United States, supra, at p. 566; United States v. Lloyd, 400 F. 2d 414, 416; United States v. Barnett, 418 F. 2d 309, 311.)
But although the extent of the informer’s role cannot be overlooked, it should not be overemphasized. Thus when, for example, the identity of the culprit rests upon evidence which is equally balanced, the informer’s testimony should not be minimized merely because he played a minor role. In other words the truly crucial factor in every case is the relevance of the informer’s testimony to the guilt or innoncence of the accused.
The defendant of course may lay his foundation for disclosure by a showing in pretrial motion or upon the development of testimony in the main trial. (With respect to a pretrial motion see Roviaro v. United States, supra, at p. 65, n. 15, and People v. Taylor, 70 Misc 2d 970, 972.) It is impossible to predict every setting which would call for disclosure of the informer’s identity. It is anticipated however that in the usual case either the course and quality of the prosecutor’s proof may suggest the need for disclosure or the defendant, rather than showing weaknesses in the prosecutor’s case, might become entitled to disclosure by the development of his own defense.
In the Goggins case the right to disclosure was established on both of these grounds. In Brown disclosure was not justified on either ground, nor was there any other circumstance demonstrating that the defendant’s demand was anything more than a purely speculative gesture designed to uncover evidence which *171 might offer some support to his case or unveil some weakness in the prosecution.
Brown was convicted of selling drugs on two occasions to an undercover police officer. On the first occasion an informer took the officer to the defendant’s apartment and told the defendant “ this is my friend, take care of him.” The informer left and the defendant sold cocaine to the officer. On the second occasion the informer waited downstairs while the officer returned to the defendant’s apartment and once again purchased cocaine.
On the night of the arrest, the officer waited in a car while his backup team escorted defendant from his apartment. The undercover officer viewed defendant through binoculars, and determined he was the person who had sold the officer the drugs. By a prearranged signal, the undercover officer blinked the headlights of the car. The backup team then placed defendant under arrest. The undercover officer reconfirmed his initial identification of defendant by viewing him from approximately 30 feet away when he was being brought into the precinct house to be booked.
Groggins was also charged with selling drugs to an undercover policeman, Luther Barnes, on two occasions. Barnes testified that on the first occasion he went to a Brooklyn bar accompanied by an informant who introduced him to a drug dealer and stated “ Abdul, take care of my man.” Leaving the informant behind, Barnes followed the dealer ‘1 Abdul ’ ’ out of the bar and purchased drugs from him. Several days later Barnes and the informer returned to the bar. Once again the informant was left behind while ‘ ‘ Abdul ’ ’ and Barnes proceeded outside the bar where the second drug sale was completed. On both occasions Barnes was face to face with the dealer for approximately two minutes.
On the evening of defendant’s arrest, Barnes left the bar and called his backup team to tell them to arrest the seller who was in the bar. Barnes had previously described the seller to the backup team, but his description of the seller on the evening of the arrest appears to be somewhat sketchy. The backup team entered the bar at dusk, and arrested the defendant. As they walked out of the bar holding defendant, Barnes drove *172 by them at approximately 15 miles per hour looking askance to make certain they arrested the right man. Satisfied they had the right man he left without returning to the precinct to make further identification. The next time Barnes saw the defendant was approximately one year later when he identified him in court as the man from whom he had bought the heroin.
In the Goggins case there were certainly gaps and weaknesses in the prosecutor’s case. Police Officer Barnes gave but a sketchy description to his backup team preceding the arrest, and except for a fleeting glance at the defendant made under less than favorable conditions, more than a year elapsed between the sale and the corporeal identification of defendant by Barnes. Thus it was apparent that who was truly the man designated as “ Abdul ” was in issue arid that the defendant was entitled to disclosure of the name of the man who set up the sale by Abdul to the police officer and introduced them to each other. This informer could clearly play a decisive role in resolving the very colorable factual dispute between Barnes and Goggins. (See, e.g., accord Portemene v. United States, supra [cited with approval in Roviaro v. United States, supra, p. 82, n. 12]; Smith v. Illinois, 390 U. S. 129, 130; cf. United States v. Polisi, 416 F. 2d 573, 578-579.)
The transaction in People v. Brown offers an appropriate contrast. In Brown, the sale was made in a particular apartment in which the defendant was found when arrested, rather than in a public bar as in Goggins. Most important, after the arrest of Brown, the officer who made the purchase went to the station house after the backup team had arrested the defendant and identified him as the seller. On these facts, the trial court properly exercised its discretion in denying disclosure. Here the risk of mistaken identification was minimal. Significantly the defendant has failed to focus on any weak point in the prosecutor’s case or closely contested issue of fact which might be resolved by disclosure of the informant’s identity.
Of course, as indicated, the defendant might become entitled to disclosure not by showing weaknesses in the prosecution case but by the development of his defense. Thus, in Goggins, defendant had no arrest record and was gainfully employed. Goggins also gave a creditable explanation for his presence *173 in the bar when arrested, denied being present in the bar at the time of the sale, and was corroborated in this respect by his now estranged wife.
Brown, on the other hand, presented no significant defense and his demand for disclosure fails on this ground as well.
In sum the record in the Goggins case, but not in Brown, presents both a plausible issue as to guilt and less than trouble-free identification testimony, and either would have been enough. Hence, disclosure should have been directed in Goggins, and even, if appropriate, production of the informant-witness; but since it relates to a substantive issue in the case, the disclosure should not be ex parte or without either party present even if in camera. Such a drastic requirement of full disclosure or production will, of course, influence the trial court’s discretion lest the prosecutorial privileges be untowardly brushed aside; but that is fair enough since the privileges are important. Of course, if the prosecution concludes that conviction of the defendant is less important than the risks of disclosure, it will have to forego pursuing the case against the defendant.
The orders appealed from are affirmed.