Budd G. Goodman, J.
What does justice require when the court ascertains after jury selection and Wade hearing, that the presence of a confidential informant at the sale was deliberately withheld from the defense until trial and that his whereabouts are now unknown?
The underlying facts are not in dispute. This defendant, James Lee, was arrested on September 25, 1974 for an A-III felony sale which is alleged to have occurred in a bathroom on May 16, 1974 at a bar in New York County. The confidential informant who led the police to the location was also present when the alleged transaction took place between the undercover officer and the defendant.
On May 12, 1975, discovery proceedings were held before Justice Leon Polsky in Part 49. In the course of fromulating his decision, Judge Polsky asked the Assistant District Attorney present: "Was there an informer present at the time of the sale who the People do not intend to call as a witness?” The Assistant District Attorney replied: "As a witness to the sale, no there was no informer present at the sale itself. ”
Counsel for the defense, Jane Denkensohn interjected: "Is there an indication by saying that, that there was an informer present either before or after the sale?” To this, the Assistant District Attorney replied: "I think that is a logical inference from what I said, that there was an informant involved in this case.” He then went on to add gratuitously the following: "The People recognize their obligation to find the whereabouts of the informant and at trial time to make him available to defense counsel; if prior to trial, the People are unable to locate that informant, to turn it over to the defense counsel.”
Judge Polsky retorted: "That is more than I would have granted.” The Assistant District Attorney then ended the colloquy by stating: "I think we have an obligation to keep an eye on our informants.”
In December, 1975, the case was sent into Part 52 for trial with the proviso that a Wade hearing be held after jury selection but before trial, with defense counsel getting daily copy of the undercover’s testimony at the hearing. During the Wade hearing, from the lips of the undercover, the court and *222 defense counsel learned much to their surprise that the informant was in fact a witness to the sale itself. Defense counsel immediately moved for the production of the informant, stating that identification was a key issue in the case. Counsel had served, although belatedly, a notice of alibi testimony upon the People. It was indelibly clear to the court from the undercover’s testimony that his identification of Mr. Lee was scanty at best. He had only seen him in a dimly-lit bar talking to other people for a few moments, and then for about 30 seconds in the bathroom where the buy took place.
The court then questioned the case Assistant District Attorney, Mr. Diamond, as to the informant’s whereabouts and was told he was missing. Upon further reflection, the court granted Mr. Diamond a continuance from Monday to Thursday to enable the People to locate and retrieve the informant for the specific purpose of an interview by defense counsel.
On Thursday morning, Assistant District Attorney Diamond advised the court that he believed the informant was in Pittsburgh. He had no idea, assuming arguendo that the informant’s wife was truthful, if he could persuade the informant to return to New York. Mr. Diamond candidly admitted that the People had no hold over the informant, nor was there any speedy procedural way to force him to return to this jurisdiction, if in fact he was there.
At this juncture, Miss Denkensohn stated that she could not adequately prepare a defense without interviewing the informant, since her client steadfastly denied his presence at the sale. She then moved for dismissal of the indictment. The court, not unmindful that the granting of such a motion might constitute jeopardy (CPL 40.30, subd 1, par [b]), had a crucial decision to make. Did the People’s actions justify the ultimate step of dismissing the indictment?
At this point, it is incumbent upon the court to reflect upon the case of Roviaro v United States (353 US 53), and its progeny. There, the Supreme Court held that to withhold the identity of the informant was error. The court in part said (pp 60-61): "A further limitation on the applicability of the privilege arises from the fundamental requirement of fairness. Where the disclosure of an informant’s identity * * * is relevant and helpful to the defense of an accused * * * the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action.”
*223 That case was soon followed by Gilmore v United States (256 F 2d 565). There, the court mandated disclosure whenever the accused cannot be afforded a fair trial without the presence of the informer. This rule is followed in the Sixth Circuit (United States v Hanna, 341 F2d 906), the Ninth Circuit (Hurst v United States, 344 F2d 327) and the Second Circuit (United States v Fay, 344 F2d 625).
In January, 1970, the Supreme Court of California in Eleazer v Superior Ct of Los Angeles County (1 Cal 3d 847, 852) took a further step by stating: "When * * * through police tactics or happenstance the informer becomes a material witness, the police should make such inquiries and arrangements as are reasonably necessary to enable the prosecution and defense to locate him.” In denying a writ of prohibition but ordering a hearing, the court en banc went on to state (p 848): "Due process requires only that the police and the district attorney undertake reasonable efforts in good faith to locate the informer, so that either party or the court itself could if it so desired subpoena him as a witness.” (Emphasis added.)
In People v Goliday (8 Cal 3d 771, 781), the court in reversing a conviction on some counts, went even further by stating: "A defendant’s right to a fair trial deserves no less respect where 'the police * * * make no effort to learn the residence of the informer or to establish a way by which to locate him.’ * * * The defendant is denied a fair trial whenever the police fail to undertake reasonable efforts to obtain information useful for locating a material witness informer who served as an active agent for the police.” Clearly, the court was extending the perimeter of its earlier decisions and imposing an additional encumbrance upon the prosecution to obtain sufficient familiarity about a police agent to make him "locatable.”
In New York, in a situation where the People refused to turn over an informant to the defense for interview and possible utilization at trial, the court took the singular step of dismissing the indictment (People v Jones, 76 Misc 2d 547).
In 1974, the landmark cases dealing with informants were decided — People v Goggins and People v Brown (34 NY2d 163). The Court of Appeals indicated that in a case where the defendant’s guilt or innocence was at issue, the trial court could no longer use the vehicle of an ex parte proceeding to determine disclosure. They concluded that the trial court must *224 look to each particular case and ascertain the relevance of the informer’s testimony to the guilt or innocence of the accused. These factors may come to light during the People’s case or by development of the defense.
In the case at bar, at the termination of the Wade hearing, it was manifestly clear, based upon the role of the informant, the limited period of viewing by the undercover, the briefness of the sale itself and the attendance of the informant at the transaction, that the informant be disclosed and his production, if possible, mandated.
The next logical question is, what must the court do when an informant’s testimony is found to be material but he is either dead or missing? In United States v Norton (504 F2d 342) the Circuit Court faced such a problem. The informant was dead, but the prosecution proffered his written statement to the defense, but they rejected the offer. The court, in denying a motion to dismiss the indictment after conviction, on the basis of a denial of due process, took the position that the defense waived its right to raise the issue of loss of exculpatory evidence. The court did state however (p 345): "it [the Government] must accept the risk that, under certain circumstances, the unavailability of the informant may make it impossible to grant the defendant a fair trial, and that when these circumstances occur, the court may be compelled to dismiss the indictment.”
In People v Ortiz (NYLJ, p 6, col 5, Dec 9, 1975), Justice Walter Gorman authored an exhaustive national survey of cases dealing with informants. Although he indicated that he could not find a single New York decision penalizing the prosecution for its failure to produce a witness no longer available, he did state, "This court concludes that situations can arise in which the unavailability of a witness would require remedial action, sometimes amounting to a dismissal of the indictment”. He analogized this to People ex rel. Hairston v Adult Detention Center, Penitentiary of City of N.Y. (76 Misc 2d 1010) where an indictment was dismissed when minutes of a preliminary hearing were irretrievably lost. Finally in a most recent case, People v Hawkins (49 AD2d 181, 183), the court in partially reversing a conviction said, "The third degree possession conviction must be reversed and a new trial granted at which the People must produce the informer, if he is available or in the alternative, dismiss the first count of the indictment.”
*225 I conclude that the instant case is one which requires stringent action. The People either withheld evidence about the informant to the defense or at the very least inadvertently misled the defense till the very moment of trial. It is apparent without bruising the imagination that: the informant is a material witness and that he is missing; that the defense has not had and will not have the opportunity to interview him; that the defense has served an alibi notice upon the People; that the observations of the defendant by the undercover were sketchy at best, thus making identification a paramount issue; and finally that the defendant is on trial for a most serious violation — an A felony.
Our Constitution, statutes and case law do not permit the State to attenuate the rights, liberties and processes of law to the detriment of a fair trial. The court therefore concludes that this defendant, James Lee, has been denied due process under the Fourteenth Amendment and has been deprived of the right of confrontation under the Sixth Amendment.
Accordingly, the motion to dismiss the indictment is granted and the defendant is discharged from custody.