THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LORETTA LLOYD, Appellant.

Second Department, December 27, 1976

*James J. McDonough (Harry D. Hersh and Matthew Muraskin of counsel), for appellant.*

*Denis Dillon, District Attorney (Judith K. Rubinstein, Anthony J. Girese and William C. Donnino of counsel), for respondent.*

MARGETT, Acting P. J. The principal issue raised is whether it was error for the trial court to refuse to order disclosure of the identities of the confidential informants.

The prosecution's case rested largely upon the testimony of two undercover police officers who testified that on April 26, 1972 they were taken to the defendant's house at 421 West Chester Street, Long Beach, by two informants, that they arrived at 10:45 P.M. and that, together with the informants, they were let into the living room of the house by the

defendant, Loretta Lloyd. The defendant asked the officers if they were "looking to cop", and they responded affirmatively. She asked them what they wanted and they told her they wanted "$25.00 spoons" of heroin.

The defendant then made a number of telephone calls and walked in and out of the living room, where the two officers remained. Then, after about 20 minutes, a woman, later identified as Sandra Gill, arrived. Ms. Gill did not speak to either of the officers, but rushed through the living room into the bedroom. Five to 10 minutes after that, the defendant called one of the police officers into the bedroom. While they spoke in the doorway, the officer observed metal foil and white powder on the bedroom dresser. He then returned to the living room. The defendant followed shortly thereafter and handed each officer a metal foil packet for which each paid her $25. The packets contained a white powder which proved to be heroin.

At about the time the sale took place, Sandra Gill appeared to be preparing to leave the defendant's house. The policemen offered her a ride, but she declined, saying that she would take a taxicab. Ms. Gill left the premises at about 11:35 P.M. and, shortly therafter, at 11:40 P.M., the officers and their informants departed,

During the period of nearly an hour that the police were present in the defendant's house, they were in her presence about 90% of the time. The officers described the house as normally lit and said they had a clear view of the defendant. A four-year-old girl was present. A wide ranging conversation took place during the hour visit and the defendant even mentioned a potential "stickup". At the trial both officers unequivocally identified the defendant as the person who sold them the foil packets.

The defendant's case consisted of an alibi defense. Myrtis Lukman, a close friend of the defendant, testified that she had taken a train from Brooklyn to Long Beach on the evening in question. It was Mrs. Lukman's wedding anniversary and she went to Long Beach to bring the defendant back to Brooklyn with her for a celebration. Mrs. Lukman stated that she had recently moved and was concerned that the defendant would not find her new Brooklyn home.

Mrs. Lukman testified that she arrived a the defendant's house at about 8:00 P.M. and that the two women talked for a while. The defendant took her daughter to a neighbor's house

and returned home to call a taxi. The women left the defendant's house at about 11:00 P.M. and went to the home of one of the defendant's friends in Long Beach so that the defendant could explain that "she would not be able to stay with them" since her plans had changed. At about 1:00 A.M. Mrs. Lukman and the defendant left Long Beach and rode the railroad to Brooklyn, where they had a party until daybreak in honor of the Lukmans' anniversary.

The defendant, Loretta Lloyd, took the stand in her own defense and basically corroborated Mrs. Lukman's testimony except that the defendant testified that the 11:00 P.M. visit to her friend's house was for the purpose of attending a card party and that she played poker there until 1:00 A.M. in order to win enough money to be able to "go out and enjoy * * * [her] friend on her anniversary night."

Philip Pirrone, a taxi manager, was also called as a defense witness. His dispatch sheet for the night in question indicated that a cab was sent to 421 West Chester Street, where it picked up two passengers at sometime after 11:05 P.M. On cross-examination, Pirrone testified that a different entry, recorded at approximately 11:05 P.M., indicated that a cab transported one passenger from 140 East Fulton Street (Sandra Gill's address) to 421 West Chester Street. The request for a cab to pick up two passengers at 421 West Chester Street was made four calls later and could have been made anytime up to midnight or 12:30 A.M. It was the latter taxi which picked up two passengers.

The jury returned a verdict of guilty of two counts of criminally selling a dangerous drug in the third degree and two counts of criminal possession of a dangerous drug in the fourth degree. On this appeal, the defendant's principal contention is that the trial court erred in denying an application, made at the commencement of the trial, for disclosure of the identities of the two informants.

Whether the identity of an informant is to be disclosed rests in the sound discretion of the trial court *(People v Goggins,* 34 NY2d 163, 169; *Roviaro v United States,* 353 US 53). In exercising its discretion, the trial court must take into account the relevance of the informer's testimony to the guilt or innocence of the accused. Where there is "a plausible issue as to guilt and less than trouble-free identification testimony," disclosure should be directed *(People v Goggins, supra,* p 173).

On the record before this court, we conclude that there was

no abuse of discretion in denying the defendant's application for disclosure. The alibi defense presented, viewed objectively, was most unconvincing (see *People v Pena,* 37 NY2d 642, 646). It seems strange that Mrs. Lukman made such a long trip simply to insure that the defendant found her house and that they did not leave Long Beach until 1:00 A.M. Furthermore, the taxicab records corroborated the prosecution's case in that they indicated that a lone passenger was transported from Ms. Gill's address to the defendant's house at 11:05 P.M. This dovetails very neatly with the testimony of the officers to the effect that Ms. Gill arrived roughly 20 minutes after they did (they had arrived at 10:45 P.M., so Ms. Gill would have arrived at 11:05 P.M., or thereabouts).

Contrary to the position taken by the dissent, the record reveals the lack of any serious attempt on the part of the defendant to locate Ms. Gill. Defense counsel stated that he learned she had been in prison and had been released. He telephoned the attorney who represented Ms. Gill but was unable to get in touch with him. However, he did not send out an investigator and did not contact the prison authorities or the parole board in order to discover Ms. Gill's whereabouts. This lack of a strong affirmative effort on the part of defense counsel casts doubt on the good faith of the defense application at issue herein.

The weakness of the defendant's alibi stands in contrast to the strength of the prosecution's case and, in particular, the unequivocal in-court identifications by the undercover policemen. Both officers had been with the defendant for nearly an hour. That was ample time for them to form a strong impression.

Defendant's reliance on *People v Goggins* (34 NY2d 163, *supra)* is misplaced. In *Goggins* the undercover police officer had two very brief meetings with a drug dealer, neither one of which involved a face-to-face confrontation of more than two minutes. Both meetings took place in a bar and the undercover officer's description to his backup team was somewhat sketchy. Rather, the circumstances of the visit to the defendant's house are more like those in *Goggins'* companion case, *People v Brown* (34 NY2d 163), where the undercover policeman actually went to the defendant's apartment. While the location of the meeting between the police officer and drug dealer is not, of course, a controlling factor, it may properly be

taken into account in any analysis of the quality of the identification testimony.

In summary, there was no abuse of discretion by the trial court in its denial of the defendant's application for disclosure of the identities of the informants. However, the judgment should be modified by dismissing the inclusory concurrent counts of criminal possession of a dangerous drug in the fourth degree (see CPL 300.40, subd 3, par [b]). As so modified, the judgment should be affirmed.

SHAPIRO, J. (dissenting). The issue on which this appeal turns is whether the People should have been required to disclose the names of the two confidential informants. In modifying, the majority of this court relies principally upon *People v Brown* (34 NY2d 163), which was decided jointly with *People v Goggins.*

In *Brown* the refusal to disclose the name of the informant was held to be proper; in *Goggins* the refusal was held to be improper. I believe that the facts here come within the *Goggins* rationale and I therefore dissent and vote to reverse the judgment and order a new trial.

The only resemblance between this case and *Brown* is that, in each, the alleged sale took place in the home of the defendant. However, in *Brown,* the defendant "presented no significant defense" (p 173). Here, however, the defendant took the stand and unequivocally denied that she was present at the time of the alleged sales and fully explained her whereabouts at that time. Her testimony was corroborated by a disinterested witness and, circumstantially, by the records of a taxi company which showed that two persons had left defendant's home at the time she and her alibi witness said they had left by taxi.

Here the police officers who allegedly made the purchases were not present at the time of the defendant's arrest and, concededly, had not seen the defendant for about three years after the sales. In *Brown,* as the Court of Appeals noted (p 171), "[o]n the night of the arrest, the officer waited in a car while his backup team escorted defendant from his apartment. The undercover officer viewed defendant through binoculars, and determined he was the person who had sold the officer the drugs." The court, in distinguishing the *Brown* and *Goggins* cases, said (pp. 167-170):

"Both of these cases raise a common issue concerning a

defendant's right to disclosure of the identity of a police informant. In each case the informant introduced an undercover police officer to a drug seller and shortly thereafter departed from the immediate area. The undercover officer then made a purchase, left the scene, and the defendant was later arrested by other officers relying on information supplied by the undercover agent. At the trial the defendant challenged the reliability of the undercover officer's identification and urged the court that a proper resolution of that issue required that the prosecutor be directed to reveal the identity of the informant who initially brought the parties together.

"In *Brown* where the sale and arrest occurred a the defendant's apartment and the proof of identification was virtually unassailed, the court denied disclosure. In the *Goggins* case, involving a sale and subsequent arrest in or around a public bar, a close identity question emerged at the trial and the Appellate Division directed that disclosure be made. We affirm in both cases * * *

"Bare assertions or conclusory allegations by a defendant that a witness is needed to establish his innocence will not suffice. Instead he must show a basis in fact to establish that his demand does not have an improper motive and is not merely an angling in desperation for possible weaknesses in the prosecution's investigation (see *Roviaro v United States, supra,* pp. 53-65).

"On this point the nature of the informant's role is of some significance. Undoubtedly the strongest case for disclosure is made out when it appears that the informant was an eyewitness or a participant in the alleged crime. *(Roviaro v United States, supra.)* * * *

"But although the extent of the informer's role cannot be overlooked, it should not be overemphasized. Thus when, for example, the identity of the culprit rests upon evidence which is equally balanced, the informer's testimony should not be minimized merely because he played a minor role. In other words the truly crucial factor in every case is the relevance of the informer's testimony to the guilt or innonence *[sic]* of the accused.

"The defendant of course may lay his foundation for disclosure by a showing in pretrial motion or upon the development of testimony in the main trial. (With respect to a pretrial motion see *Roviaro v United States, supra,* at p. 65, n. 15, and *People v Taylor,* 70 Misc 2d 970, 972.) It is impossible to

predict every setting which would call for disclosure of the informer's identity. It is anticipated however that in the usual case either the course and quality of the prosecutor's proof may suggest the need for disclosure or the defendant, rather than showing weaknesses in the prosecutor's case, might become *entitled to disclosure by the development* of his own defense."

The court concluded (p 172): "In sum the record in the *Goggins* case, but not in *Brown,* presents both a plausible issue as to guilt and less than trouble-free identification testimony, *and either would have been enough.* Hence, disclosure should have been directed in *Goggins,* and even, if appropriate, production of the informant-witness" (emphasis supplied).

At the trial, in denying the defendant's motion for disclosure (which had been denied without prejudice at the *Wade* hearing), the court said: "Mr. Brandt [defense counsel], I would call to your attention that according to the testimony which we heard in the *Wade* hearing from the police officers, there were, apparently, according to their testimony, six witnesses to this alleged sale: The defendant, some friend of the defendant's whose name and last address has been testified to, two confidential informants, and two police officers. Now, at this point undoubtedly the two police officers, undercover officers will be testifying. That accounts for two of the witnesses. So far as this Court is aware, you and/or the defendant have control over two of the other witnesses, namely, the defendant and her friend. With those thoughts, as well as the other questions raised by the testimony and so forth, at this time in balancing the equities, if you will, that is, the public interests, necessity for confidential informants, that entire argument, vis-à-vis, the rights and possible prejudices to the defendant by non-disclosure, I would again, at this time, based on this record, deny your motion and request."

The reason given by the trial court should receive short shrift. In the first place the record fails to show that the alleged "friend" was under the control of the defendant. Furthermore the record affirmatively discloses efforts by the defendant to ascertain her whereabouts. Those efforts revealed that she was released from prison and that her lawyer did not know where she was. Certainly, under such circumstances, it should not be held that the defendant should be denied the crucial testimony of two eyewitnesses—the informants who

were present at the time of the alleged transaction—because she failed to call a convicted criminal as her witness, even assuming her availability.

When, as here, a defendant testifies and produces other plausible evidence to establish an alibi, it is an unconstitutional denial of such defendant's right to a fair trial to refuse disclosure to her of eyewitnesses to the occurrence, even though they are confidential informants. In this connection too, it should be recalled that about three years elapsed since the alleged purchases by the police officers so that the continued utility to them of the informers may well be doubted. However that may be, the defendant could not constitutionally be deprived of an opportunity to ascertain the names and whereabouts of those witnesses and of the right to call them in an attempt to establish the verity of her defense for, as the court said in *Roviaro v United States* (353 US 53, 60-61): "Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [of nondisclosure] must give way." There was here "a plausible issue as to guilt" *(People v Goggins,* 34 NY2d 163, 172, *supra)* and it was therefore basic prejudicial error to deny disclosure. I would reverse the judgment and order a new trial.

DAMIANI, RABIN and TITONE, JJ., concur with MARGETT, Acting P. J.; SHAPIRO, J., dissents and votes to reverse the judgment and order a new trial, with an opinion.

Judgment of the County Court, Nassau County, rendered March 5, 1975, modified, on the law, by reversing the convictions of criminal possession of a dangerous drug in the fourth degree (two counts), and the sentences imposed thereon, and the said counts are dismissed. As so modified, judgment affirmed.