Jones, J.
With respect to the principal issue tendered on this appeal we hold that in the circumstances of this case the prosecution had no obligation, after identifying and producing an informer, to grant him immunity when, in the exercise of his privilege against self incrimination, the informer refused to give what, assumedly, would have been exculpatory testimony.
Earl Fodderell was one of several persons arrested and indicted on Federal charges arising out of an extensive, cooperative drug investigation conducted by local and Federal law enforcement officers. After Fodderell, reputedly a large *162 narcotics distributor in New York City, had pleaded to the Federal charges, he indicated his willingness to co-operate with the New York City police in further investigations and was registered as a confidential informer. In consequence of disclosures by Fodderell, police attention was focused on defendant and plans were made for his apprehension. Fodderell participated in the formulation of plans for a purchase from defendant. He introduced the undercover officer to one Gardner, a friend of defendant destined to be the intermediary, and assisted in arranging a first appointment which was never kept by defendant. Fodderell again was active in setting up a second meeting between the undercover officer and defendant on June 27, 1973 at which both Fodderell and Gardner were present. The purchase money, together with a payment for Gardner’s services, was handed to Gardner and the details of a transfer from defendant were worked out. Fodderell apparently was an eyewitness to the sale at that time by defendant to the undercover officer of four ounces of heroin. Defendant made another sale to the same undercover officer on July 6, 1973, this time of one kilo of heroin. While this sale, too, could be attributed to Fodderell’s earlier co-operation, it does not appear that he had any direct part in arranging it, nor was he a witness to its execution.
At his trial defendant sought to interpose the defense of entrapment. During the course of lengthy arguments incident to adverse rulings as to the admissibility of evidence offered by defendant in support of such defense, the trial court suggested that defendant call Fodderell to give testimony concerning his claim. After initially opposing this suggestion, and particularly because of the court’s exclusion of other evidence, the defense decided to interview Fodderell who was then serving a 12-year sentence on the Federal drug charges. After an initial interview, defense counsel requested that Fodderell be brought to court. The prospective witness appeared with his attorney who stated that Fodderell would invoke his privilege against self incrimination and refuse to testify unless granted immunity.
After an in camera discussion with Fodderell’s attorney out of the presence both of defense counsel and of the prosecutor and without disclosing the nature or particulars of Fodderell’s prospective testimony, the Trial Judge concluded that, if believed, the testimony would be exculpatory and constituted material evidence which the jury should hear. The prosecution *163 declined the trial court’s repeated suggestion that the witness be granted immunity (CPL 50.30). Fodderell’s attorney thereupon reported that his client refused to be interviewed further by the defense.
The Trial Judge apparently was not satisfied with the representations of Fodderell’s attorney in this regard, and accordingly, Fodderell was himself called to the witness stand out of the presence of the jury. Following discussion of the situation with the court, Fodderell agreed to confer further with defense counsel. After such conference defense counsel became less than enthusiastic to call the witness, conceding some weaknesses in the prospective testimony.
The following day the dilemma was resolved. On advice of his counsel Fodderell informed the court that he had reconsidered his predicament and would invoke his privilege against self incrimination. The prosecution restated his opposition to any grant of immunity. The defense requested permission to call Fodderell to the stand, to ask questions and to require the witness to exercise his constitutional privilege in the presence of the jury. This request was denied, but the court did instruct the jury that Fodderell had been called as a defense witness and in its absence had invoked his privilege against self incrimination. The jury was advised not to speculate about the reasons for Fodderell’s exercise of his constitutional rights, and the Fodderell chapter was closed.
Defendant now advances several grounds for reversal of his conviction by the jury. Principally his contentions revolve around Fodderell. First, it is asserted that defendant was prejudiced by the People’s failure to call Fodderell, so frequently and importantly referred to in the People’s proof, as a prosecution witness, which effectively denied defendant his constitutional right of confrontation. We know of no instance, however, in which a court has dictated to a prosecutor whom he shall call to the witness stand. (Clearly to be distinguished are both the extent of the obligation, if any, of the prosecutor to make potential witnesses available to the defense, and the entitlement of the defendant to an instruction as to inferences which may be drawn from the failure of the prosecution to call a witness; but neither of such issues has any place in this case.)
Additionally, defendant contends that it was prejudicial error to deny defense counsel’s request to call Fodderell to the witness stand and to put him to his claim of privilege against *164 self incrimination in the presence of the jury. We have no hesitancy to state our conclusion that there was no abuse of discretion by the Trial Judge in this regard. (United States v Martin, 526 F2d 485, 487.)
More troublesome is the question identified and addressed in the opinions at the Appellate Division and adverted to by the People—whether in the circumstances of this case the failure of the prosecution to confer immunity, and thereby to make Fodderell’s testimony available to the defendant, warrants reversal (cf. People v Tyler, 40 NY2d 1065).
There can be no serious doubt as to Fodderell’s right to assert his constitutional privilege in this case. Even if the content of his prospective testimony were to be deemed insulated by his conviction on the Federal charges—a proposition which is not entirely clear—there is substance to the argument that his proposed testimony would have been so inconsistent with prior statements he had made to Federal authorities as to expose him to conviction for perjury. No serious contention is now advanced that the privilege was not warranted; the focus is rather on the prosecution’s failure to respond to the court’s urgings that the witness be granted immunity.
In our analysis, if it be assumed both that the witness properly exercised his right to refuse to testify and that the testimony he would have given would have been materially exculpatory (as appears to have been the conclusion of the trial court),* the failure of the prosecution to grant immunity did not deny defendant due process or deprive him of his right to a fair trial in the circumstances of this case.
Preliminarily we observe that the right guaranteed a defendant under the Sixth Amendment to our Federal Constitution, "to have compulsory process for obtaining witnesses in his favor”, like so many other rights, whether of constitutional sanction or of lesser stature, is not absolute. The right exists only to the extent that witnesses may otherwise be compelled to attend and to testify; the Constitution mandates no more. Thus, there is manifestly no constitutional right to *165 obtain the attendance of a witness who has died or disappeared or is otherwise unavailable. Similarly there is no right to compel testimony over a claim of recognized privilege such as that of client-attorney or of penitent-priest. Nor may testimony be extracted from a witness who appears but persistently refuses to testify despite the sanction of punishment for contempt. Furthermore, in none of such instances do our courts accord a broader meaning to the Sixth Amendment guarantee by holding that where the desired testimony may not be compelled, such circumstance requires that the conviction of the defendant be set aside. So, too, it must be where the testimony is unavailable because the witness takes refuge in his constitutional privilege against self incrimination. "The Government cannot be penalized, either under the Compulsory Process Clause of the Sixth Amendment or the law of entrapment, because [Fodderell] chose to exercise his Fifth Amendment rights, thus making himself as unavailable for purposes of testimony as the deceased informant in United States v. Soto [504 F2d 557].” (United States v Gomez-Rojas, 507 F2d 1213, 1220, cert den 423 US 826.)
The issue in the present case must be approached, therefore, not in the perspective of defendant’s rights under the Sixth Amendment, but rather in the perspective of defendant’s right to due process. "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution” (Brady v Maryland, 373 US 83, 87). The critical issue, of course, is when may it be said that the prosecution is "suppressing” such testimony? In its norrtial context suppression is thought to connote a willful, or, in rare instances, an unintentional, withholding of evidence. There was no such suppression here, however, inasmuch as defendant was apprised of the identity of the informer and afforded an opportunity to interview him. Fodderell was later produced at the courthouse. In these circumstances, no issue can be raised as to any violation of defendant’s right to disclosure of the identity of the informer (cf. People v Goggins, 34 NY2d 163), or as to any failure of the prosecution to produce the informer. The question here is whether more may be required of the prosecution; was this defendant’s constitutional right to a fair trial denied because the prosecution did not take substantial affirmative steps and by granting effective *166 immunity make the critical testimony available to the defense?
We agree, arguendo, that there might be substance to a contention that if an informer has also been an active participant in the criminal transaction—as an agent of the law enforcement authorities—the prosecution may not block a defendant’s access to the testimony of such a witness by refusing to grant immunity. In those circumstances it could be argued that the People had placed themselves on the horns of a dilemma and must either grant effective immunity (thus making the testimony available to the defendant so far as it lies within the power of the prosecution to do so), or, alternatively, accept a dismissal of the prosecution (Rovario v United States, 353 US 53, 61). The delineation of the obligations of the prosecution and of the rights of the defendant in such a situation, however, must await another day. That is not the case now before us.
In the present instance, at most Fodderell was a facilitator and an observer. He was the source of the information which led to investigation of defendant and he participated in the preparations for the sales. He may have been an eyewitness to one of them. In short, his was the now familiar role of the informer; he was not an actor in the criminal transactions. The limited extent of Fodderell’s involvement is determinative. The prosecution here was not obliged to grant immunity and its failure to do so does not entitle this defendant to a reversal of his conviction (United States v Bautista, 509 F2d 675, 677, cert den sub nom. Monsivais v United States, 421 US 976; Earl v United States, 361 F2d 531, cert den 388 US 921).
We have examined the other assertions of error advanced by defendant and find them to be without merit. In particular, it was not error to deny defense counsel access to a tape recording of a postindictment interview between defendant and the police. The trial court listened to the entire recording and concluded that it was of an interview in which the police sought defendant’s co-operation in wholly unrelated matters, and that there was nothing therein having any relevance to the case on trial. The assertion that there might be material on the tape which could be used on cross-examination of defendant and that that possibility chilled defendant’s readiness to take the witness stand in his own behalf, to the extent that it is not met by the trial court’s evaluation of the *167 recording, is the product only of sheer, unsupported speculation.
Nor was it error to deny defense counsel’s request to play to the jury another tape recording of a conversation between defendant and his counsel, assertedly prepared ante litem motam, designed to substantiate the claimed defense of entrapment. This would have been self-serving hearsay of the most evident nature (cf. Richardson, Evidence [10th ed], § 356).
Finally, we find no error in the trial court’s instructions to the jury with respect to the tape recordings made of the criminal transactions which constituted the basis for the charges against defendant or in its refusal to give the circumstantial evidence charge requested by defense counsel.
The order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 We do not consider it significant that the nature and particulars of the proposed testimony were never revealed to the prosecution or that defense counsel never made a formal tender of proof. It suffices that the Trial Judge satisfied himself as to the content of the testimony and evaluated it as exculpatory if believed. We think this provides a sufficient basis for the rights to which defendant is said to be entitled.