■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN DE JESUS MARTINEZ, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered August 2, 1978, convict- ing him of criminal sale of a controlled substance in the second degree (two counts), upon a jury verdict, and imposing sentence. Judgment af- firmed. Defendant was convicted of two separate heroin sales to an undercover officer, one each in October and November of 1976. On ap- peal defendant's primary contention is that the trial court's premature termination of an *in camera* hearing to determine whether a confidential informant could and should be produced at trial deprived him of his rights to confront witnesses and to a fair trial. This contention is with- out merit. A defendant's right to obtain disclosure of the identity of a police informant turns on "the relevance of the informer's testimony to the guilt or innocence of the accused" *(People v Goggins,* 34 NY2d 163, 170). In this case it was not an abuse of discretion to deny disclosure because the informant's role in the actual sales was minimal and the evidence of defendant's guilt was overwhelming. The informant's role in

the sales was to introduce the undercover officer to the seller, but he did not witness or otherwise participate in the sales (see *People v Lee,* 39 NY2d 388; *People v Pena,* 37 NY2d 642; *People v Medina,* 56 AD2d 582). Although defendant presented an alibi defense in his testimony, we do not believe there was a close identity question. The undercover officer observed defendant on two occasions at close range for a total of more than 30 minutes under good lighting conditions. His identification of defendant at trial was positive and unhesitating. The inconsistencies in the officer's descriptions of defendant were minimal. Defendant was identified by voice as well as appearance, and the jury had an opportunity to listen to the tapes of what was purportedly defendant's voice. Various other corroborative evidentiary materials were introduced. Against this, the jury was justified in rejecting defendant's testimony (see *People v Pena, supra; People v Colon,* 39 NY2d 872; *People v Lloyd,* 55 AD2d 171, affd 43 NY2d 686). Finally, the subsequent showup identification of defendant does not cast doubt upon the undercover officer's testimony. Aside from his substantial independent basis for identifying defendant, it was proper for the officer to have viewed defendant at a showup to make certain that the correct person had been arrested (see *People v Morales,* 37 NY2d 262). Even had there been an obligation to produce the confidential informant, no reversible error occurred because the prosecutor made a diligent, good faith effort to produce him and defendant failed to meet his burden of showing a need for this witness (see *People v Jenkins,* 41 NY2d 307). The efforts exerted over a three-day period to locate the confidential informant at his last known home address and workplace, and the efforts to locate him through addresses supplied by the Probation and "Welfare" Departments were all that could be reasonably expected. At the time the trial court denied defendant's request for a further adjournment, the prospects for locating the witness were no more promising than they had been three days earlier. As already discussed, the value of locating the informant was dubious. In choosing to continue with the trial, then in its third week, the trial court wisely exercised its discretion so that the time lapse between the trial testimony and the jury's deliberations would not be prejudicially long. Accordingly, the judgment is affirmed. Mollen, P. J., Hopkins and O'Connor, JJ., concur.

Titone, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum: In my opinion the trial court erred in terminating the *in camera* hearing held to ascertain the efforts of the People to produce the confidential informer as a witness. At the time the trial court took such hasty action, detectives from the office of the District Attorney had a promising lead which conceivably may have led them to the informer's whereabouts and his ultimate production as a trial witness. Defendant was convicted of selling heroin to an undercover officer on two occasions, the first on October 6, 1976 and the second on November 9 of the same year. At the *Wade* hearing, the undercover officer testified that on the first occasion, in October, he arrived at a grocery store with the informer and was introduced to defendant. The officer then had a three-minute conversation with defendant under "pretty good" lighting, which culminated in the latter selling him a quarter of an ounce of heroin. Although at the *Wade* hearing the officer testified that the informer was present in the store at the time of the buy, at trial he stated that the informer had left the store just

prior to the exchange and waited for him near the entrance to the store. As to the November 9 transaction, the undercover officer testified that he met defendant on four occasions that evening. He stated that while he was negotiating the purchase of heroin from defendant in the same grocery store that evening, the informer was outside sitting in an automobile. However, according to the officer, as a result of defendant saying he didn't know the officer before negotiations took place, the latter took defendant outside and brought him to the informer. When defendant said he now remembered them both, the officer and defendant went back into the store. Ultimately that evening defendant sold the officer an amount of heroin for $1,300. The undercover officer described the person who sold him the heroin on each of the two occasions as a male Hispanic, being anywhere from five feet six inches to five feet seven inches tall, and weighing from 160 to 165 pounds. However, he did not remember whether the seller had a beard or mustache at the time of the October sale, nor was he able to identify a photograph of defendant as the person who sold him narcotics notwithstanding the fact it was taken close to the time of the transactions. It should also be noted that the officer, with limited experience in undercover police activity at the time of the transactions, had noticeable difficulty in testifying without constantly refreshing his recollection as to the events. Indeed, the trial court, obviously troubled by the officer's "very, very poor" recollection, stated that a substantial part of his testimony was characterization, legal conclusions and reading from transcripts of the tapes. Of additional significance is the fact that shortly after defendant's arrest, approximately four months after the second sale, the undercover officer was summoned to the precinct and was told that the seller in the October and November, 1976 transactions, or someone who fit his description, had been arrested. The officer then viewed defendant in a showup through a one-way mirror, and identified him as the seller on each occasion. Defendant, testifying in his own behalf at the trial, denied selling heroin and being in the grocery store on the dates in question. Returning to the hearing pertaining to the informer which the trial court aborted, the record reveals that near the close of the People's case, on June 20, 1978, the trial court, indicating that a substantial issue had been raised regarding the identification of defendant, granted the application of the defense for production of the informer at an *in camera* hearing to determine whether he would testify at the trial. The trial court also directed the District Attorney's office to make a good faith effort to produce the informer in chambers for questioning by defense counsel. On the next day (June 21), the *in camera* hearing into the efforts made by the prosecution to locate the informer began with the testimony of two detectives. Each recounted the unsuccessful efforts he or she made to ascertain the informer's whereabouts. On June 22, the day after the said detectives testified, the hearing was recessed and the trial was continued based on the prosecutor's assertion that his office had contacted the probation officer of the informer. The probation officer agreed to furnish the address of the informer provided the Judge who sentenced the defendant gave her permission to divulge such information. During the morning session on June 22, the prosecutor advised the trial court that the probation officer had furnished the District Attorney's office with the informer's current address. After the luncheon recess, the trial court reconvened the *in camera* hearing

at approximately 2:10 P.M. It was advised by the prosecutor that three detectives had gone to the address in question, knocked on doors for approximately 10 minutes but found no one in the building, and asked a woman in the next building whether she knew the informer. She evidenced either an unwillingness or inability to furnish them any pertinent information. At this point the trial court told the prosecutor to call the informer's probation officer and direct her, in the name of the court, to proceed to the courthouse. After placing the telephone call, the prosecutor informed the Trial Judge that he was advised that the probation officer was out to lunch and would return at 2:30 P.M. At this juncture the trial court summarily concluded the *in camera* hearing and directed the trial to proceed on the ground that the production of the informer "does not appear to be possible at this time, nor are there sufficient encouraging prospects to delay the furtherance of this trial". In my opinion the action of the trial court, under the circumstances, was unwarranted. The record clearly reveals that at the time the prosecutor made the telephone call and advised the trial court that the probation officer was expected to return from lunch at 2:30 P.M., it was between approximately 2:20 to 2:30 P.M. Thus, there was no apparent justification for the failure of the trial court to grant a short continuance of the hearing in order that a further effort be made to contact the probation officer and have her appear. Unquestionably, at the very point the hearing was summarily aborted by the trial court, it had obtained just previously its only substantive and promising information during the two-day *in camera* proceeding that might possibly, and perhaps probably, lead to the imminent production of the informer. In view of the impermissible showup identification, the interval of several months between the purported sales and defendant's arrest, the undercover officer's inability to remember whether the seller had facial hairs or was clean shaven on October 6, as well as the officer's sometimes poor recollection of important aspects of the transactions, the testimony of the informer might well have been critical to the question of defendant's guilt or innocence. The trial court's stated rationale for refusing to grant a short continuance, i.e., the risk of impairing the fact-finding process by any further delay, fails to withstand close scrutiny. Under the circumstances the risk of affecting the fact-finding process by the granting of a short delay of perhaps no longer than a half hour was miniscule. Where a potential witness is identified to the court and may be found in the jurisdiction, a short adjournment after a showing of some diligence, good faith and good cause, should not be denied because of possible inconvenience to the court or others, especially where, as in this case, denial of the request for a short adjournment may deprive the accused of the fundamental right to present witnesses in his defense (cf. *People v Foy*, 32 NY2d 473, 477). Few rights are more fundamental than that of an accused to present witnesses in his own defense *(Chambers v Mississippi*, 410 US 284, 302). In conclusion, it also should be observed that there is some conflict in the record as to whether the informer was present at the October 6 sale. However, the record is clear that the informer did at least introduce the seller to the undercover officer on October 6 and cause the seller to remember on November 9 that he had made a previous sale to the undercover officer. Thus, by introducing the parties to one another on October 6 and also performing another preliminary function

on November 9, the informer may be considered to have been an active participant in setting the stage (cf. *People v Goggins,* 34 NY2d 163, 170; *People v Alamo,* 63 AD2d 6, 7). Since the informer, if located, might have played a decisive role in resolving the factual dispute between the undercover officer and the defendant, I believe the trial court should have granted a short continuance of the *in camera* hearing in order to explore the lead furnished by the probation officer with respect to the informer's whereabouts. Accordingly, I vote to reverse the judgment and order a new trial.