*61 OPINION OF THE COURT
Michael A. Corriero, J.
The defendant was convicted of murder in the second degree after a jury heard evidence that he killed a young man by shooting him in the back several times. The evidence included: the testimony of an eyewitness who knew the defendant, having attended the same school with him, and who identified the defendant as the shooter; a second eyewitness who identified the defendant; a third eyewitness who described the shooter but did not identify the defendant in court, although her description matched that of the defendant; the defendant’s admission that he shot the deceased but in self-defense.
The shooting occurred in the early morning hours of December 3, 1987 in a social club in Brooklyn.
In October or November of 1988, approximately 10 months prior to the trial, the prosecution turned over to defense counsel a police report. It contained an interview with a witness who claimed he was present in the social club at the time of the shooting and who identified an individual, who was not the defendant, as the shooter. The name, address and telephone number of the witness had been redacted from the report.
Defense counsel did not make any applications with respect to this report during the 10 months prior to trial.
On August 15, 1989 the case was referred to this court for trial after both sides indicated their readiness for trial before another court. On that day during a pretrial hearing, defense counsel moved, for the first time, for the disclosure of the identity of the aforementioned witness. The court directed the prosecutor to disclose the witness’s name, address, telephone number and other contact information, to the defense counsel and also directed the prosecutor to "try and locate him”. Apparently the prosecutor in an off-the-record discussion had previously indicated to the court and defense counsel that the witness appeared to be unavailable.
The witness was not located and the trial proceeded. The court permitted the defense, however, to present evidence of the statement of the missing witness over the objection of the prosecution, in particular his identification of another person as the shooter, for the purpose of impeaching the identification of the two eyewitnesses. After the defendant’s conviction and sentence new counsel was assigned to représent the defendant. (Defendant’s trial counsel was assigned pursuant to *62 article 18-B of the County Law, his appellate counsel is the Legal Aid Society.)
New counsel discovered that at the time of the defendant’s trial the witness had two pending Kings County indictments; that on April 18, 1989, four months prior to defendant’s trial, the witness had entered into a "cooperation agreement” with the Kings County District Attorney’s Office, to testify in a murder case unrelated to the instant case or his own pending cases. On April 27, 1989 he testified at that murder trial; on June 23, 1989, he appeared in court and pleaded guilty on a Kings County indictment; on October 15, 1989, he appeared for sentencing on his pending cases and received a sentence of probation.
None of this information was brought to the attention of the court by the prosecutor or the defense.
The primary contentions of the defense in the CPL article 440 motion are that the defendant’s due process rights were violated because: (a) the trial prosecutor defied a court directive and either willfully concealed or made no effort to obtain the presence of an informant who had identified someone other than the defendant as the perpetrator of this crime; (b) that the trial prosecutor allowed a witness to give perjured testimony concerning the informant’s credibility; (c) that the trial prosecutor made a patently false and highly misleading summation argument concerning the informant’s whereabouts.
The prosecution contends that prior to trial, the trial prosecutor made a substantial effort to locate the witness; he was unaware of the existence of the cooperation agreement; pursuant to the court’s directive he turned over to the defense the name, address, telephone number and date of birth of the witness; furthermore, at the time of the defendant’s trial, the witness was not a confidential or registered informant, nor was he under the control of the prosecution and that he was not a police informant with respect to this case; he was simply "a witness” and that the prosecution fulfilled its responsibilities with respect to this witness.
Counsel for the prosecution and defense were given an opportunity to orally argue their contentions and they have both submitted memoranda and factual affidavits, an affirmation of the trial prosecutor was also submitted. No additional hearing was deemed necessary by either counsel.
This court makes the following factual conclusions as they *63 relate to the issues raised by this motion: the witness possessed exculpatory information; the prosecution did not arrange for the unavailability of the witness, nor did the trial prosecutor make any deliberate misrepresentations to the court concerning the whereabouts of the witness, nor did he defy any court directive with respect to the witness or willfully conceal any information concerning the witness nor did he fail to make efforts to obtain the presence of the witness for trial.
In sum a review of the record, and memoranda of law submitted, does not lead this court to the conclusion that the trial prosecutor or the District Attorney’s Office intentionally caused the unavailability of this witness nor did they intentionally mislead the court concerning the availability of the witness.
The issue remains, however, as to the extent of the obligation of the prosecution with respect to this witness who possessed exculpatory information.
The extent of the prosecution’s duty with respect to the production of a witness or the securing of his availability at trial depends on the type of witness; a witness is categorized or typed, generally by the nature of the information he possesses and his relationship to one side or the other.
For the purpose of this discussion we will discuss three categories of witnesses.
I. A Brady witness — a witness who possesses exculpatory information. (Brady v Maryland, 373 US 83.)
II. A Goggins/Jenkins witness — a witness who is a confidential informant whose testimony is relevant to the guilt or nonguilt of the accused and who is in the employ or control of the prosecution (People v Goggins, 34 NY2d 163; People v Jenkins, 41 NY2d 307).
The court in Goggins (supra) held that the prosecution must disclose the name of an "informant” who played a material role in gathering the evidence against the accused. The court in Jenkins (supra) extended that rule to also require production of that informer witness when he was under the control of the prosecutor.
III. A witness who is neither a Brady nor Goggins/Jenkins type witness — and who is equally available or unavailable to both sides.
At early common law a prosecutor was under a duty to call all eyewitnesses to an offense (see, Note, Duty of the Prosecutor *64 to Call Witnesses Whose Testimony Will Help the Accused to Establish His Innocence, 1966 Wash U LQ 68, 70-71). Since the advent of compulsory process, however, it has been recognized that a prosecutor has broad discretion in the preparation and presentation of his cases. (See, People v Andre, 44 NY2d 179, 184.)
It has been stated more recently, that as a general rule a prosecutor is not under an obligation to call any witness, even an eyewitness, "whose testimony his own investigation convinces him would be unreliable, cumulative or irrelevant” (People v Andre, supra, at 184).
The existence of an obligation or duty to disclose exculpatory information does not automatically give rise to a duty to produce. As the Court stated in People v Jenkins (supra, at 309), "[T]he right to production does not flow from the right to disclosure”.
Once the source of the exculpatory information is revealed and made available to the defense the prosecutor’s obligation ends, provided the witness is equally available to the defense. (See generally, Brady v Maryland, supra; People v Jenkins, supra; People v Tayeh, 96 AD2d 1045 [2d Dept 1983].)
The right or the duty to produce arises when the exculpatory witness is under the control of the prosecutor. In that situation he must produce the witness and make him available to the defense. (See, People v Jenkins, supra.)
A witness is under the control of a prosecutor when the whereabouts of the witness are in fact known to the prosecutor and the witness is available to him. The term control is used in a broad sense and includes "influence” over the witness as well as management or employment. (People v Moore, 17 AD2d 57, 60 [3d Dept 1962].) Also, the People are presumed to have control over witnesses who are "informers” who participated to some extent before or during the commission of the crime. (1 CJI[NY] 8.53, at 445.)
The apparent rationale for the imposition of this obligation on the prosecution is that informants who work with the police on a particular case are not simply a source of information, but an integral part of the police operation or team. They are agents of the police. If unable to produce such a witness at trial the People have a duty to explain the unavailability of the witness. (1 CJI, op. cit.)
Research has not revealed any case directly dealing with the prosecution’s obligation to produce a nonpolice informant *65 witness who has exculpatory information. However, the Court of Appeals in People v Jenkins (supra) dealt with the issue as it related to police informants. The Court held that in the absence of bad faith on the part of the prosecution in causing the unavailability of a Goggins type witness (a police informant, undercoverman, special police agent, informant witness and informant tipster, who has relevant information on the issue of guilt or nonguilt) and when they have exerted reasonable good-faith efforts to locate the witness, in order to compel production, or dismissal of the charges, defendant must demonstrate that the witness was once within the control of the prosecution; that the prosecution was responsible for his disappearance, and that the proposed testimony of the witness would tend to be exculpatory or would create a reasonable doubt as to the reliability of the prosecution case.
The intention of the Jenkins Court in so holding was stated as follows: "We intend by our holding to make it clear that if it is demonstrated that the prosecutor once had the informant under his control and was responsible for his disappearance, there should be a duty to produce and if this be impossible of accomplishment, then he may be faced with dismissal of the charge, or a new trial may be appropriate. However, if the prosecutor exerts reasonable good faith efforts to make the witness available, then neither dismissal of the charges may be ordered nor a new trial directed unless the defendant demonstrates affirmatively that the testimony of the informant was not only relevant but also that it is likely to have been favorable to some degree in tending to exculpate the defendant or, alternatively, he must show the existence of a significant likelihood that the witness’ testimony could be impeached to a meaningful degree creating a doubt as to the reliability of the prosecutor’s case.” (41 NY2d, supra, at 311.)
The Jenkins Court further stated (supra, at 312): "An absolute duty of production, or, alternatively, dismissal of the prosecution’s case, is required only where the People have intentionally procured the disappearance of the informant when they knew or should have known that the testimony would be material and relevant to the defense, or have exerted inadequate efforts to locate the informant, to avoid his or her presence at trial.”
The Jenkins standard is not applicable to this case for several reasons:
First, the witness is not a Goggins type witness. In Goggins *66 (supra) the witnesses introduced an undercover police officer to a drug seller for the purpose of assisting the prosecution in gathering evidence against the accused. In that sense the witness was an informer as to the accused. The witness was not simply a source of information but an integral part of the police operation who had material and relevant information concerning the guilt or nonguilt of the accused.
The witness in this case was not an informer against the accused. He was merely one of many bystanders who happened to be in the social club at the time of the shooting. He did not participate or play any role in the shooting, nor was he under the employ or control of the prosecution at the time of the shooting.
Second, the witness was not under the control of the prosecution. The whereabouts of the witness was not known to the prosecution at the time of the trial. It cannot be presumed that he was under the control of the prosecution because he had been a paid informant on other cases or that he testified approximately three months prior to the trial as a cooperating witness. However, even assuming arguendo, he was once under the control of the prosecution, at the time of the trial he was no longer any type of informant and any vestige of legal control that the prosecution once had over him ended with his cooperation on the murder trial. Certainly the prosecution cannot be held responsible as guarantors of the presence at trial of witnesses who were once informers on other trials. (See, People v Watkins, 67 AD2d 717 [2d Dept 1979].)
Third, the prosecution was not responsible for the witness’ disappearance. Although there is some evidence that the District Attorney’s Office arranged for the witness’ wife to be flown to Florida subsequent to his testimony at the trial, as a protective measure and that the witness indicated that there would be someone there to meet her, there is no evidence that the prosecution arranged the witness’ disappearance for this trial. Especially since the witness was present in Kings County on at least three occasions prior to the trial, on April 18, 1989 (the date of the cooperation agreement), April 27, 1989 (the date he testified), June 23, 1989 (the date he pleaded guilty to an indictment). It should also be noted that the witness’ probation report, dated September 6, 1989, indicated that his residence of one year was a Kings County address. As stated in Jenkins (supra, at 310), the prosecution should not be *67 penalized when an informant has, on his own initiative, effectively disappeared after relinquishment of government control.
If the witness is not, as aforesaid a Goggins/Jenkins witness, he cannot be categorized either as a simple witness who is equally available or unavailable to both sides. The witness possessed exculpatory information material to the guilt or nonguilt of this defendant, he was a Brady witness. The prosecution, therefore, had an obligation to disclose this information to the defense.
The prosecution did disclose this information, although they withheld the source, some 10 months prior to the trial, thereby making it possible for defense counsel, if he so chose, to move for disclosure of the identity of the witness and efforts could have been made to secure the attendance of the witness at the time of the trial.
Perhaps the identity of the witness should not have been concealed in the first instance; the prosecution claims that it did so for the protection of the witness and not because of his role as an informer. Nevertheless, having received the substance of his information, defense counsel chose not to move for disclosure of his identity. The mere fact that the People, appropriately or not, withheld his identity did not place the witness in the category of a confidential informant within the purview of the Goggins/Jenkins standards.
Consequently this witness was a Brady witness. The prosecution fulfilled its obligation, under the circumstances of this case, when it revealed his existence and the content of his information. Discovery of his identity and efforts to secure his attendance could easily have been accomplished with an appropriate protective order. (See, CPL 240.40, 240.50.)
The defense’s remaining contentions concerning the subornation of perjury by the trial prosecutor and the prosecutor’s remarks in summation concerning the witness are unsupported by the evidence and are without merit and, in any event, sufficient facts now appear in the record to permit appellate review.
The motion of defense pursuant to CPL article 440 is, therefore, in all respects denied.