■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KERMY RIVERA, Appellant.—Appeal from judgment, Supreme Court, Bronx County (David Stadtmauer, J.), rendered on November 1, 1984, convicting defendant, after a jury trial, of murder in the second degree and sentencing him to an indeterminate term of 20 years to life, held in abeyance pending the evidentiary hearing ordered in the companion appeal.

Order of same court and Justice, denying defendant's motion to set aside the verdict pursuant to CPL 440.10 (1) (g) and (h), dated February 28, 1985, reversed, as a matter of discretion in the interest of justice, and the action is remanded to Trial Term to hold an evidentiary hearing with respect to said motion and for further proceedings consistent therewith.

On November 1, 1984 defendant was sentenced to an indeterminate term of from 20 years to life imprisonment upon his conviction after jury trial of murder in the second degree. He thereupon moved to set aside the verdict on the basis of "newly discovered evidence". As the Trial Justice ruled, although such a motion must be made prior to sentence under CPL 330.30, the court, prior to sentence, had given leave to counsel to submit the motion after sentence. Such a motion

after sentence is made pursuant to CPL article 440. For purposes of this appeal, it is immaterial under which article the motion was made. The burden in either case is on the defendant to demonstrate that the evidence now sought to be introduced is "newly discovered", could not have been produced at trial even with due diligence on the part of the defendant, and is of such character that had it been received at the trial it is probable that the verdict would have been more favorable to the defendant (CPL 330.30 [3]; 440.10 [1] [g]).

The premise of the motion was the failure and refusal of the People, with the court's approval, to make known the name of the principal witness, Esther Vasquez, prior to the trial. The evidence against defendant was that as the upshot of a street altercation with the victim, Angel Velez, in which Velez assaulted defendant, the latter ran into a house and emerged 5 or 10 minutes later with a gun which he fired twice at Velez. As Velez ran across University Avenue, defendant followed him and shot twice more at him. The doctor who performed the autopsy concluded that death was caused by a bullet which entered the left side of Velez' back. The sole evidence and testimony identifying defendant as the killer came from Vasquez who testified she had known both the victim and defendant for some period of time prior to the murder. There was some evidence that she had an animus against defendant because he had "made out" with Vasquez' sister but had rejected Vazquez.

Defendant's request prior to trial for disclosure of the names of witnesses was refused by the People, in part upon the ground that they had no obligation to furnish such names in any event, and further that defendant had waived the right to such information by stipulation entered into in connection with the furnishing of other information without the need for a motion.

Defendant took the stand and denied that he had killed the victim. He claimed he had been playing basketball a short distance away from the scene when he heard shots fired. He claimed he had not observed any altercation, or the body of Velez lying on the street. Detective Lambert testified that on November 4, 1983, approximately three weeks after the incident conducted a lineup and that one Carmen Lopez, who was not called as a witness, viewed the lineup and identified someone other than defendant as the killer.

Although there is some confusion in the record, it is clear that defendant's attorney had asked the court to direct the

District Attorney to provide the names of his witnesses and that the District Attorney refused to do so and that the court approved of such refusal. Even after the jury had been sworn, the court stated it would not permit revelation of the identity of the witness until she was called.

In support of his motion to set aside the verdict, defendant submitted an affidavit of one Marisol Olmeda, a defense witness, who was discovered by defendant's family after the trial. In that affidavit she stated: "On October 15, 1983 at approximately 5:00 pm I was with Esther on Walton Ave. and 104th Street in the Bronx. Esther was selling yellow type drugs on the street at the time. Esther and I went to W. Tremont and University Avenue in the Bronx (we walked) to buy a better quality drug when a girl from the street, who I don't know, approached Esther and me and told us that someone was shot dead. The other girl who approached us said that she heard someone accuse Kermy Rivera. Esther told me and this other girl that she knows how to get revenge on Kermy for not wanting her as his girlfriend. She said, 'Now I am going to really fuck him.' Esther could not have been a witness to the shooting because she was with me at the time of the shooting, more than 6 blocks away."

Without an evidentiary hearing, the Trial Justice concluded that this was not newly discovered evidence and that there was insufficient evidence that it could not have been produced at trial with due diligence on the part of defendant, and that, in any event, it was only impeachment evidence, which did not make it probable that the verdict would have been more favorable to defendant.

We believe that it was an abuse of discretion to deny an evidentiary hearing.

Although the question of whether or not the prosecution is obligated to disclose the names of its witnesses in every case has not been definitively answered, it must be concluded that where the evidence to be given by the witness is material to the defendant's guilt or innocence, disclosure is encouraged. A superficial inquiry into the circumstances and consequences of disclosure is not enough. Indeed, absent compelling circumstances such as the danger of intimidation, there should be disclosure. Nor is it dispositive that the witness is known to the defendant unless it is clear that the defendant knows that the witness will testify.

Thus, in *People v Andre W.* (44 NY2d 179, 186) the Court of Appeals stated: "The availability of a legal arsenal of protec-

tions is significant since the right of a defendant to discover a potentially material witness must be balanced against a founded fear that such discovery might lead to intimidation of the witness or the influencing of his testimony. Yet, with proper safeguards, if the evidence is of material importance to the defense on the question of guilt or innocence it should be disclosed (cf. *People v Goggins,* 34 NY2d 163, cert den 419 US 1012)."

Even the name of an informant must be disclosed if his testimony would "clearly play a decisive role in resolving the very colorable factual dispute" between defendant and Vasquez as to what had occurred *(People v Goggins,* 34 NY2d 163, 172, *supra).*

In our case it is clear that if, in fact, Vasquez was six blocks away from the scene of the shooting at the time it occurred, her testimony that the defendant was the killer would obviously be undercut. Thus, the testimony of Olmeda would not merely be cumulative or impeachment testimony. It might very well result in a more favorable verdict. In *People v Stokes* (83 AD2d 968), where a similar motion was denied without a hearing, the defendant was convicted of robbery solely upon the testimony of the victim who identified the defendant on the street some 20 days after the incident. A hearing was directed solely upon the basis of an affidavit by the defendant's nephew that he had observed the robbery and had recognized one of the robbers, who was not his uncle. The affidavit further stated that he had not come forward previously out of fear that the man he recognized or the man's friends "would get me". As the Second Department noted, it was not that the witness was newly discovered but that since trial he had for the first time made statements rendering such evidence newly discovered and requiring, at the least, a hearing.

Similar is *People v Rodriguez* (88 AD2d 890), where the newly discovered evidence consisted of a recantation and this court ruled that "fundamental fairness requires that there be an evidentiary hearing on this motion." It was there noted that if the evidence offered might " 'destroy the basis upon which the judgment of conviction rests' ", a hearing is required (88 AD2d, at p 891, quoting *People v Shilatano,* 218 NY 161, 170).

On this record it cannot be concluded without an evidentiary hearing that the testimony of Olmeda would merely be for impeachment purposes or contradictory or cumulative. If

believed, it would destroy the credibility of the only witness for the prosecution *(People v Barreras,* 92 AD2d 871). It cannot be found on this record that there was a failure on the part of defendant to use appropriate diligence to find the witness in light of the fact that he was never informed of the name of the witness against him until she was called to testify. It may well be that a new trial is required. At a minimum, fairness demands that there be an evidentiary hearing, as we have directed, while we hold the appeal from the judgment of conviction in abeyance. Concur—Kupferman, J. P., Ross, Asch, Fein and Kassal, JJ.