OPINION OF THE COURT
Lee Cross, J.
The defendant’s motion for discovery of the names, addresses and dates of birth of the civilian witnesses who may be called by the People is granted.
NAMES AND ADDRESSES OF WITNESSES
The Court of Appeals has not definitively decided whether it is within a Trial Judge’s discretion to grant a defense request for the names and addresses of the People’s witnesses. (People v Andre W., 44 NY2d 179 [1978].) The First Department has said that ordering such disclosure is within a Judge’s discretion and, "absent compelling circumstances such as the danger of intimidation, there should be disclosure”. (People v Rivera, 119 AD2d 517, 519 [1st Dept 1986].) The Third Department agrees that disclosure is in the Trial Judge’s discretion, but it puts the onus on the defendant to demonstrate a material need for disclosure. (People v Miller, 106 AD2d 787 [3d Dept 1984].) While the Second Department has not ruled on this issue, it has refused to prohibit Trial Judges from granting such disclosure. (Matter of Vergari v Kendall, 76 Misc 2d 848 [Sup Ct, Westchester County], affd 46 AD2d 679 [2d Dept 1974].) I thus conclude that it is within a Trial Judge’s discretion to order the pretrial disclosure of the names and addresses of witnesses.
*576 The next issue is what the standards are for the exercise of that discretion. As noted above, the First Department seems to presume disclosure, whereas the Third Department seems to presume nondisclosure. Rulings in trial level cases differ widely because they are premised on different presumptions as to discoverability and nondiscoverability. In this case, the People argue that the defense has the burden of demonstrating that the information is of material importance to the defense, that the request is reasonable and not unduly burdensome on the prosecution and that the defense will be harmed if disclosure is not ordered. The defense urges that discovery should be granted absent evidence from the People that the defendant will threaten witnesses. In other words, the People argue that there is a strong presumption against discovery and the defense argues that there is a strong presumption in favor of discovery.[1]
It is much the easier course for a Trial Judge routinely to deny disclosure, except in unusual circumstances. Since the decision is in the Judge’s discretion, a denial of disclosure cannot be faulted. It is impossible to rule out all possibility of witness intimidation in any case. No Judge wants to risk being blamed for the intimidation or murder of a witness, even if the possibility of such is very remote in a given case.
Judges should do everything in their power to prevent any witness from being intimidated or harmed. A founded belief that such harm to a witness is reasonably possible should, without more, lead to a denial of a defense request for the name and/or address of the witness. Even though every disclosure order should prohibit counsel from sharing the *577 information with the defendant,[2] slip-ups can happen. But, a remote and unlikely possibility of witness intimidation cannot override all other considerations. It is too convenient an excuse for a prosecutor to use in all cases when what is really feared is that defense counsel will learn the weaknesses in the People’s case or will develop impeachment material for use at trial.
Pretrial discovery enhances the search for truth. The Court of Appeals has said that CPL article 240: "evinces a legislative determination that the trial of a criminal charge should not be a sporting event where each side remains ignorant of facts in the hands of the adversary until events unfold at trial. Broader pretrial discovery enables the defendant to make a more informed plea decision, minimizes the tactical and often unfair advantage to one side, and increases to some degree the opportunity for an accurate determination of guilt or innocence * * * In short, pretrial discovery by the defense and prosecution contributes substantially to the fair and effective administration of justice.” (People v Copicotto, 50 NY2d 222, 226 [1980].) The same can be said of the pretrial discovery of the names and addresses of witnesses. When an attorney can speak to a witness before the witness testifies, he can discover what the witness can say which would be helpful to his client and can learn about facts which may make less damaging the testimony which hurts his client. The proponent of a witness routinely does this with the witness. Why should the cross-examiner not be able to do the same, in an effort to bring out all of the truth? The attorney can also do further investigation based on what the witness has said, whether by interviewing other witnesses, examining physical evidence or looking for impeachment material which undercuts the witness’ testimony. And, counsel can make decisions as to disposition based on what the witness tells him. Most witnesses are not inconvenienced by being visited by an investigator. Most, although not all people are perfectly willing to talk about an experience they had with crime. If the witness does not want to speak to an investigator, he can simply decline to do so.
Virtually every decision which has heretofore been written on the issue of disclosure of the names and addresses of witnesses has involved felony charges. Whatever may be the *578 proper presumption in a case involving violent felony charges, I conclude that in misdemeanor prosecutions, the presumption should be in favor of disclosure.
Misdemeanor prosecutions call into play different considerations from felony prosecutions. Bribery of a witness (Penal Law § 215.00) and intimidating a witness (Penal Law §§ 215.15, 215.16, 215.17) are felonies and thus engaging in such conduct would expose a misdemeanor defendant to a greater penalty than that faced in the misdemeanor prosecution. However, intimidating a witness in a serious felony case could enable a defendant to escape a more serious penalty than he would be exposed to if his intimidation or bribe were uncovered. Thus a felony defendant has a much greater incentive to attempt to bribe or intimidate a witness than does a misdemeanor defendant.
In weighing the background and character of a defendant to determine the potential for witness intimidation, a Judge is obviously going to weigh differently a first offender charged with a misdemeanor compared to a predicate felon charged with a violent felony. The Andre W. case (44 NY2d 179, supra) involved a rape. The Rivera case (119 AD2d 517, supra) involved a murder. And the Miller case (106 AD2d 787, supra) involved a charge of possession of a 13-inch shank by a convicted felon in a prison. While many felons also commit misdemeanors, as a group, misdemeanor defendants pose less of a risk to witnesses than do felony defendants.
Every felony case has been indicted by a Grand Jury. All essential witnesses testified in the Grand Jury and, in the course of that presentation, were interviewed by an Assistant District Attorney. The Assistant District Attorney had the opportunity to discern and to write notes in the file about exactly what the particular defendant allegedly did. The Assistant District Attorney could evaluate each witness as to perception, reliability and ability to testify. Someone in the courtroom at a calendar call thus has some kind of idea as to what the case is all about. All too often, this is not true in misdemeanor prosecutions. Very often, only a police officer has spoken to the witness, sometimes only on the telephone. No one with legal training has sorted out who allegedly did what. Particularly when more than one defendant allegedly committed a crime, no one with legal training may have found out first hand from the witnesses what each defendant allegedly did. Attorneys know that they cannot confidently rely, in evaluating the strengths and weaknesses of a case, on second *579 hand hearsay from a police officer as jotted down by a harried Assistant District Attorney in ECAB. When the Assistant District Attorney in court has only what the police officer says to go on, he often holds out for a heavy plea because the case seems to be very strong. Not infrequently, a case is only resolved when defense counsel speaks to the witnesses and conveys information about the weaknesses in the case to the Assistant District Attorney. Conversely when the defense attorney speaks to the witnesses and learns that there are no weaknesses in the case, counsel can confidently persuade the client to accept an appropriate disposition.
Finally, the attorneys on both sides of misdemeanor cases are generally much less experienced than those who prosecute and defend felony charges. Experience in the cross-examinatian of witnesses may enable an attorney effectively to cross-examine a witness whom he has never spoken to, although anyone’s cross-examination will certainly be improved by a prior interview with the witness. But, when an attorney has very limited experience in cross-examination, a lack of preparation may seriously diminish his ability to bring out facts favorable to his client. That impedes the search for truth. While some may say that cross-examination skills are burnished in the fires of battle, the client does not need to suffer in order to teach young attorneys how to cross-examine witnesses they have never been able to interview.
In this case, the defendant is a first offender, 19 years of age. As gleaned from the complaint and the police reports provided in discovery, one Luis Rivera allegedly told the police that the defendant, Carlos Arrellano, James Mendez and an apprehended juvenile, "acting in concert”, were riding in a stolen 1983 Chevrolet 228 which they parked in front of 140 10th Street. They allegedly attempted to remove parts from the stolen Chevrolet and then fled the scene in a 1983 Chevrolet Camaro. The police officer stopped the Camaro, arrested the men and recovered a plastic bag with 2.9 grains of cocaine and a spent .22 caliber shell from somewhere in the car. A homemade device which was believed to be a "zip” gun was allegedly taken from the defendant’s pocket but the ballistics report says that it is not an operable weapon. No parts allegedly removed from the stolen car are vouchered. The Camaro is registered to someone who lives at the defendant’s home address, which is not near where the stolen car was dropped off. Neither the complaint, nor the answers and attached police reports enlighten the reader as to what it is *580 alleged that the defendant did. It is unclear whether all of the men were in the stolen car or whether some were only in the Camaro. It is unknown where in the Camaro the cocaine and the spent shell were found. Only Luis Rivera can tie the defendant to the stolen car, and only Mr. Rivera knows exactly what the defendant allegedly did.
The possibility of witness intimidation is very small in this case. The defendant has no prior record. The crimes charged are not violent. While it is of concern that a device thought to be a zip gun was allegedly recovered from the defendant, the device was not an operable weapon and apparently could not be used to simulate a gun in committing a crime, since the ballistics report describes it as being made of white/yellow metal and the propulsion device as being made of rubber bands.
Defense counsel does not ask for the telephone numbers of the civilian witnesses, nor would I order them to be disclosed. If a witness has a listed telephone number, counsel can find it in the telephone directory once the address is provided. If the witness has an unlisted number, it should not be revealed to someone without the witness’ permission.
DATES OF BIRTH OF THE PEOPLE’S WITNESSES
The dates of birth of the People’s witnesses raise different considerations. In their answers, the People state that they will provide "criminal convictions and pending cases” of their witnesses. Presumably this will be done when the witness testifies. This falls, however, far short of what a competent defense attorney wants and is entitled to.
The Second Department has approved impeaching a defendant with a plea to a violation, which is not a criminal conviction and which thus presumably would not be turned over voluntarily by the People. (People v Dillon, 157 AD2d 742 [2d Dept 1990]; and see, People v Guarino, 131 AD2d 875 [2d Dept 1987].) Since Sandoval considerations apply only to defendants (People v Ocasio, 47 NY2d 55 [1979]), a witness for the People can also be impeached with a conviction for a violation. In fact, a witness can be impeached with any immoral, vicious or criminal act which may show him to be unworthy of belief, even if it did not result in a conviction. (People v Sorge, 301 NY 198 [1950].)
A competent attorney will subpoena a witness’ "rap sheet” from the Division of Criminal Justice Services, but the attor *581 ney needs the witness’ date of birth to do so. The "rap sheet” may contain information on arrests which resulted in dismissals, youthful offender findings and pleas to violations, because the system established under CPL 160.50 and 160.55 to seal fingerprints and photographs is not foolproof.[3] While sealing provisions may prevent an attorney from tracking down the dismissals and youthful offender cases, appropriate motions might be made for unsealing. Additionally, cases which resulted in a conviction only of a violation do not generally appear on the "rap sheet” as fingerprints have been returned under CPL 160.55. Those can be found only by feeding the name and date of birth of the witness into the court computers in the various boroughs. Occasionally such a search will also turn up instances where the witness was convicted of a crime, but was either not fingerprinted, as can happen in a civilian initiated case, or the prints were prematurely returned under the sealing provisions, such as when a case is dismissed as a felony and later charged as a misdemeanor. Once a conviction of a witness, whether of a crime or a violation, is found, competent counsel will seek police reports on the circumstances underlying the arrest to use in formulating questions to impeach the witness. In order to do this, counsel needs time to subpoena such records from the police.
The People do no less when it is a defendant or a defense witness they seek to cross-examine. They pull their files on the earlier case and use all the information therein, including police reports, to question the witness about the circumstances underlying the case. Without background information on the facts surrounding the arrest, the cross-examiner is stymied when the witness claims to have pleaded guilty, even though innocent, on the advice of counsel, or claims to have played only a minor role in the crime. Of course, the People would like defense counsel to be restricted to knowing only about the fact of conviction, not the underlying facts about the crime and only about convictions of crimes, not of violations. But any competent attorney is entitled to know and can skillfully use much more information in the defense of his client.
CONCLUSION
For the reasons stated in this opinion, the People are *582 ordered to give to defense counsel the names, addresses and dates of birth of their civilian witnesses. Defense counsel is instructed not to divulge this information to his client or to anyone who might divulge it to his client. Counsel is to instruct his investigator to identify himself clearly to the witness and to tell the witness on whose behalf the interview is being conducted. The interviewer may not display a badge to the witness, as that may intimidate the witness, but is required to give the witness his card or another written indication of who he is and on whose behalf he is conducting the interview. Counsel cannot send a letter or any other written request to the witness "inviting” the witness in to the office for an interview, since many witnesses may misconstrue such an invitation, particularly on official letterhead, as an obligation to appear. If counsel orally invites the witness to come to his office for an interview, he must simultaneously inform the witness that he is under absolutely no obligation to come.
The People have not moved for discovery of the names, addresses and dates of birth of the civilian witnesses who may be called by the defense. I leave for another day the questions of whether the considerations spelled out in this opinion may apply also to such discovery, whether, if they do so apply, the defense must first move for such discovery before reciprocal discovery can be ordered and whether the Fifth or Sixth Amendment impacts on such a motion for discovery.

. It should be noted that, as a practical matter, defense counsel will often learn the names and addresses of the witnesses without a court order. This is probably why the issue is not pressed in more cases. In many cases, the alleged crime is between relatives or acquaintances and the defendant or someone known to the defendant can give this information to defense counsel. Even when the potential witness is a total stranger to the defendant, there are ways to learn of his or her address. Counsel can subpoena all of the police reports as well as get them in discovery from the People. While both the People and the police routinely black out the addresses and telephone numbers of witnesses, not infrequently something is overlooked by the People or the police or the name or address can be read through the blackout. The telephone book, hospital records or Department of Motor Vehicles records are all sources of addresses and/or telephone numbers. One must ask, though, why the government pays the People and police to black out all this information and then pays appointed counsel to spend a lot of time and energy to uncover the information.

. Should counsel believe that it is essential to the preparation of his defense to share the name with the defendant, he can apply to the court for permission to do so.

. If a Judge is concerned about this, he can look over the record when it is received and redact entries which should have been deleted but which were not. The fact that many records are not properly updated, however, makes this impossible to do in some cases.