Raynard METTS, Petitioner,

v.

David MILLER, Superintendent, Eastern
Correctional Facility, Respondent.

No. 96–CV–4191(RR)(RML).

United States District Court,
E.D. New York.

Dec. 12, 1997.

Raynard Metts, Napanoch, NY, pro se.

Charles J. Hynes, Kings County District Attorney by Roseann B. MacKechnie, Ann Bordley, Phyllis Mintz, Brooklyn, NY, for Respondent.

ORDER

RAGGI, District Judge.

This court has reviewed the report of Magistrate Judge Levy and petitioner's objections thereto received December 8, 1997. The court finds, for the reasons stated by the magistrate judge, that Mr. Metts' petition must be *denied*. The court disagrees with petitioner's contention that a hearing is necessary re: the unavailability of witness Lisa Mena to the defense at trial. The trial court's instruction to the jury re: Mr. Mena's statement to the police and her failure to identify Mr. Metts in a line-up sufficed to ensure that this witness's unavailability at trial. Thus, for this and the other reasons stated in this report, the petition for a writ of habeas corpus is *denied* as is a certificate of appealability.

So Ordered.

## REPORT AND RECOMMENDATION

LEVY, United States Magistrate Judge.

Petitioner *pro se* brings this action pursuant to 28 U.S.C. § 2254(a) for a writ of habeas corpus. By order dated March 18, 1997, the Honorable Reena Raggi, United States District Judge, referred this matter to me for a report and recommendation. For the reasons set forth below, I respectfully recommend that the petition be denied.

## BACKGROUND

In 1989, the Kings County District Attorney charged petitioner, under Indictment Number 296/89, with two counts of murder in the second degree (N.Y.Penal §§ 125.25(1) and (2)), one count of criminal possession of a weapon in the second degree (N.Y.Penal § 265.03), one count of criminal possession of a weapon in the third degree (N.Y.Penal § 265.02(4)), and one count of reckless endangerment in the first degree (N.Y.Penal § 120.25). The jury trial commenced November 13, 1989 in New York Supreme Court, Kings County, before the Honorable Michael R. Juviler.

At trial the prosecution alleged that on January 1, 1989, petitioner, acting in concert with two other men, fired numerous shots at the door of 121 Clermont Avenue in Brooklyn causing the death of Doris Smith. (Trial Tr. 19–27.)[1] According to the prosecution, the three men believed that Doris Smith's son, David Smith, who also lived at 121 Clermont Avenue, had raped their friend Sandra Bridgette. (*Id.* at 23–24.) The prosecution's key witnesses were Sandra Bridgette and David Smith.

Ms. Bridgette, a cooperating witness who was twenty-three years old at the time, testified that she had known petitioner all her life. (*Id.* at 374–75) Ms. Bridgette stated that on December 31, 1988, she and an acquaintance named David Smith were smoking crack cocaine in Mr. Smith's bedroom at 121 Clermont Avenue. (*Id.* at 383–87.) At approximately midnight, Ms. Bridgette was attempting to leave the apartment (*id.* at 388) when Mr. Smith allegedly choked her, put a knife to her throat, and sexually assaulted her. (*Id.* at 390–92.) According to Ms. Bridgette, she then ran outside, met her friend Dennis Martin, and told him of the alleged assault. (*Id.* at 395–96.) Ms. Bridgette testified that immediately upon hearing her account of the incident, Mr. Martin left and returned fifteen minutes later with two men whom Ms. Bridgette knew to be Mr. Martin's friends: petitioner and a person named "Reggie." (*Id.* at 396–98.) Ms. Bridgette said that she then led the three men to David Smith's house, where Mr. Martin knocked on the door. (*Id.* at 398–402.) Immediately after Mr. Martin knocked on the door, Ms. Bridgette testified that the lights in the house went out, and she heard petitioner tell her to "move," after which he allegedly said "Fuck it man. Let's blast the place." (*Id.* at 402.) Ms. Bridgette stated that she then ran across the street, stopped, turned back around, and witnessed "Raynard, Reggie and Dennies [sic] shooting at the house." (*Id.* at 405.) She testified that she heard "a number of shots" (*id.* at 406) and specifically saw petitioner, who was standing approximately seventeen feet from the front door, point his gun at the house. (*Id.* at 405, 409.)

Mr. Smith denied Ms. Bridgette's accusation concerning the assault, but admitted to having smoked crack cocaine with Ms. Brid-

---

1. References to the trial transcript will be cited as "Trial Tr."

gette on December 31, 1988. Mr. Smith testified that, at his mother's request, he had asked Ms. Bridgette to leave, whereupon she became agitated and threatened that Mr. Smith would "pay for this." (*Id.* at 201). Approximately two hours later, Mr. Smith allegedly heard a "loud knocking" on the front door of the house. (*Id.* at 203). He testified that he looked out of a window to see who was knocking and saw "three male blacks," including petitioner, in front of the house. (*Id.* at 204–211.) Mr. Smith stated that his mother, Doris Smith, went to the front door and said "[h]e's not here," after which Mr. Smith heard "multiples of shots" and observed bullets going through the door and his mother falling to the floor. (*Id.* at 214–17.) Mr. Smith identified petitioner in a police line-up on January 4, 1989. (*Id.* at 221–22.)

The prosecution also called as witnesses David Smith's brother and sister, Robert Smith and Peggy Smith, who testified that they heard gunshots but were unable to see the faces of the persons in the yard the night of the incident. (*Id.* at 95–96, 145–47.) In addition, the prosecution called two New York City police detectives and one New York City Housing Authority police officer who had conducted an investigation of the crime (*id.* at 39–48, 53–86, 534–42), a ballistics expert (*id.* at 545–67), and the medical examiner who performed the autopsy on Doris Smith's body. (*Id.* at 335–67.)

The defense called one witness, New York City Police Detective Jose Nieves, who testified that on January 4, 1989 a number of people, including a witness named Lisa Mena, had viewed a police line-up at the eighty-eighth precinct in Brooklyn containing six men, including petitioner. (*Id.* at 583–84.) Lisa Mena's name was included on the prosecution's witness list and, before the prosecution rested its case, the Assistant District Attorney had represented to the court that he planned to call Lisa Mena to testify.[2] However, the prosecution later informed the court that Ms. Mena had failed to appear and that its efforts to locate her had been unsuccessful.[3]

Upon learning that Ms. Mena would not be testifying at trial, defense counsel moved to dismiss the indictment "based upon the failure to provide Brady material." (*Id.* at 610.) At sidebar, defense counsel explained that the prosecution had provided a copy of a police report indicating that this witness had "seen a male with a gun enter the yard" on the night of the shooting but had failed to identify petitioner in the police line-up. (*Id.* at 608–09.) The witness's name and address had been redacted from the police report. (*Id.* at 608.) Defense counsel maintained that he had previously asked the prosecution for the names of all witnesses who had failed to identify petitioner in the police line-up, and the Assistant District Attorney had as-

2. At a sidebar held at the close of Ms. Bridgette's testimony on November 15, 1989, the prosecution stated: "I have one very short witness whose name is Lisa Menna (ph.) who will be appearing tomorrow." (Trial Tr. at 505.)

3. At a sidebar held immediately before Detective Nieves testified on November 16, 1989, the prosecution stated:

Well, Judge, the witness that I was trying to locate, both Detectives Nieves and Walker have returned here and she was not at the address that we had contacted her before. I had had phone conversations with her earlier during the week in which she had assured me that she would be here today.... In fact, as late as last night, I had a conversation with her sister who assured me she would be down here. She is not, your Honor.

In response to further questioning by the court, the prosecution explained:

My last contact with her personally, your Honor, was on Tuesday.... She indicated that she would be here. In fact, I had asked her to come in Wednesday. She said, "I have an appointment that day with my child. It's [sic] a long lasting appointment." I said, "Okay, how about first thing on Thursday?" She said no problem with that at all. I gave her all of the necessary information. She said she would be down here. I called yesterday evening after our proceedings. I talked to her sister who lives at the same phone number and address which had previously [sic] given me. Her sister said no, she wasn't in right then. "Yes, she knows about coming down there. Let me take down all the information again. I know she's already talked about it." I called this morning when I got in. There was no answer. Through the balance of the day my paralegal has called. There was no answer. Detective Nieves was down here and had the use of a police vehicle. He and Detective Walker who had contacted her on other occasions, went out to the address and went to the apartment. There was no response at the apartment.

(*Id.* at 570–71.)

sured the court that all such witnesses would be called to testify at trial. (*Id.* at 577.) Based on that representation, defense counsel apparently opted not to bring a pre-trial motion to compel disclosure of Ms. Mena's name and address. (*See id.* at 576–77.) [4] Defense counsel thus argued that, in refusing to disclose Ms. Mena's name and address before trial, the prosecution had withheld "exculpatory information." (*Id.* at 574–75, 608–09.)

The court denied defense counsel's application, as well as defense counsel's request for a missing witness charge. (*Id.*) Instead, the court instructed the jury [5] (1) on the content of Ms. Mena's statement to the police, [6] and (2) that Ms. Mena did not identify petitioner in a police line-up. (*Id.* at 611–13.) [7]

The jury found petitioner guilty of murder in the second degree (N.Y.Penal § 125.25(2)) and not guilty on the remaining counts. (*Id.* at 820.) On December 11, 1989, the court sentenced defendant to a term of imprisonment of twenty-three and one-half years to life. *See People v. Metts,* Ind. No. 296/89, Decision and Order Denying Motion to Vacate Judgment at 1 (Kings County Aug. 10, 1995).

On December 3, 1990, petitioner, represented by counsel, perfected his appeal by filing a memorandum of law with the Appellate Division, Second Department ("Appellate Division"). On May 21, 1990, petitioner filed a *pro se* supplemental brief with the Appellate Division. In his appeal, petitioner argued that (1) the court denied him a fair trial by neglecting to conduct a hearing to deter-

**4.** In fact, the court indicated that, had defense counsel made such an application, it "clearly would have ordered disclosure of her name...." (Trial Tr. at 576.)

**5.** In its brief, the government states that "petitioner had agreed to a stipulation" regarding the court's jury instruction on this point. (Respondent's Memorandum of Law in Support of Affidavit in Opposition to Petition for a Writ of Habeas Corpus ("Resp't Mem.") at 5, n. 3.) Although defense counsel had proposed a stipulation that Ms. Mena's police statement "be read to the jury," the prosecution stated that it was "not inclined to enter into a stipulation" at that time. (Trial Tr. at 611.) Accordingly, the court took judicial notice that "if [Ms. Mena] were a witness she would say the same thing" that she said to the police and instructed the jury to that effect. (Trial Tr. 611–13.)

**6.** According to a Police Accident Report dated January 1, 1989, Ms. Mena said that she was walking past 121 Clermont Avenue at 1:00 a.m. on January 1, 1989 when she "observed two male blacks and one female black enter the yard of 121 Clermont Av." According to her statement, "one of the male blacks had a gun." (Resp't Mem., Exhibit A1, Police Accident Report, Jan. 1, 1989) ("Police Report"). Ms. Mena also "assured" the police investigator that she could "identify the female and one of the males." (*Id.*) She described the "male black with the gun" as "dark skin, 5'6', navy blue ski cap, dark color pants and a dark color down jacket." (*Id.*)

**7.** The court's instruction to the jury regarding Lisa Mena does not appear in the trial transcript. However, the record provides sufficient evidence from which one can reasonably deduce that the court gave such an instruction. First, three pages of the transcript, specifically pages 614 through 616, are missing. Those missing pages contain a record of the events that occurred immediately after Justice Juviler described the instruction that lie intended to give the jury. In response to an inquiry from my chambers, the District Attorney's Office represented that it had contacted the court reporter who transcribed the trial in an attempt to locate the missing pages, but that the original tapes were also missing from the warehouse in Albany where such records are stored.

Nonetheless, there are numerous references to the missing jury instruction in the record. For example, in his jury charge after summations, Justice Juviler referred to the "statement to the police which you heard this morning." (Trial Tr. at 716) In addition, during their deliberations, the jury requested the "statement" of Lisa Mena, and the transcript indicates that the court reporter then "read-back" the statement. (*Id.* at 744.)

More significantly, in his summation defense counsel made ample use of Lisa Mena's police statement and her failure to identify petitioner in the police line-up:

You also have judicial notice and a stipulation that if Lisa Mena were to testify, she saw two guys and a female enter the yard that night and one of those guys had a gun. She got a description of the guy and she assured the detective who took the statement that she could make and identification and she went down on January 4th, 1989. She viewed a lineup. Raynard was in the lineup as number two. She did not recognize Raynard. She picked out number four.

(*Id.* at 633.) Indeed, despite his complaint that the transcript does not reflect "when" or "how" the jury received the court's proposed instruction on Lisa Mena's testimony (Pet'r Mem. at 3), petitioner concedes that his attorney assented to the instruction. (*Id.*)

mine if Lisa Mena possessed exculpatory evidence; (2) the police denied him assistance of counsel during his police line-up; (3) the evidence of his guilt was legally insufficient and against the weight of the evidence; and (4) his sentence was unduly harsh and excessive.

By memorandum and order dated June 8, 1992, the Appellate Division unanimously affirmed the judgment against petitioner. *People v. Metts,* 184 A.D.2d 592, 584 N.Y.S.2d 644 (2d Dep't 1992). The court found unpreserved for appellate review petitioner's claim that the trial court should have conducted a hearing to determine whether Lisa Mena's testimony would have provided exculpatory evidence because defendant had failed to request such a hearing and had agreed to an instruction that the court then read to the jury concerning Ms. Mena's potential testimony. *Id.* at 645. The court also held that the verdict was not against the weight of the evidence, the sentence imposed was not excessive, and defendant's other contentions were without merit. *Id.*

By letter dated June 22, 1992, petitioner sought leave to appeal to the New York Court of Appeals, again arguing that the trial court should have conducted a hearing to determine whether Lisa Mena possessed exculpatory material. On August 14, 1992, the Court of Appeals denied petitioner's application. *People v. Metts,* 80 N.Y.2d 907, 588 N.Y.S.2d 832, 602 N.E.2d 240 (1992).

By submissions dated March 15 and 16, 1995, and supported by a reply affidavit dated July 20, 1995, petitioner moved *pro se* in the New York Supreme Court, Kings County, for an order vacating the judgment pursuant to N.Y.Crim.P.L. §§ 440.10(1)(b), (g) and (h). Petitioner argued that (1) the prosecutor improperly postponed disclosure of Lisa Mena's identity; (2) the instructions to the jury did not cure the effect of Ms. Mena's unavailability as a witness; and (3) an affida-

vit of Ms. Mena constituted newly discovered evidence showing that the prosecution fraudulently misrepresented at trial that it had contacted Ms. Mena.[8]

By decision and order dated August 10, 1995, Justice Juviler denied petitioner's motion to vacate his judgment of conviction. *People v. Metts,* Ind. No. 296/89, Decision and Order Denying Motion to Vacate Judgment at 5 (Kings County Aug. 10, 1995) ("Aug. 10, 1995 Order"). The court held that petitioner's first two claims were procedurally barred from review because defendant failed to raise those claims at trial. *Id.* at 3. The court also found that petitioner's third claim was without merit because Ms. Mena's affidavit provided no exculpatory evidence; "[t]he defense-requested instruction to the jury at trial was of far more value to the defendant than is the proffered affidavit," and the record "squarely contradicted" defendant's claim of fraudulent misrepresentation. *Id.* at 4–5.

On August 28, 1995, petitioner sought leave to appeal from the decision denying his motion to vacate the judgment. On November 22, 1995, the Appellate Division denied petitioner's application. *People v. Metts,* 94–08357, Decision and Order on Motion (2d Dep't Nov. 22, 1995) ("Nov. 22, 1995 Order").

On August 15, 1996, petitioner filed the instant application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a). In his application, petitioner contends that his conviction was improperly procured through prosecutorial misconduct resulting in his inability to call Lisa Mena as a witness on his behalf at trial. (Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus, dated Aug. 7, 1996 ("Pet'r Mem."), at 1–2.) Petitioner presents two principal claims of prosecutorial misconduct. He asserts that the prosecution (1) improperly postponed disclosure of Lisa Mena's ad-

---

**8.** In her 1994 affidavit, Ms. Mena stated, in pertinent part:

... I saw two males either black or hispanic and a female who was also black or hispanic. I do not recall what they were wearing or anything about their description. Though the weather was clear it was dark and I could not see their faces. A few days later, two detectives from the New York City Police Depart-

ment interviewed me about the incident. They wrote notes but did not take a written statement from me. I recall going to a precinct and looking at photos but I did not identify anyone. I was never contacted by the police or district attorney til [sic] now. No one asked me to testify at any hearing or trial....

(Pet'r Mem., Exhibit B, Affidavit of Lisa Mena, sworn to Mar. 9, 1994.)

dress and telephone number, and (2) fraudulently misrepresented that Ms. Mena would appear as a witness at trial. (*Id.* at 4–6.) His claims are predicated, in part, on the affidavit of Ms. Mena obtained after the trial in which she states: "I was never contacted by the police or [the] district attorney." (*Id.* at 3; *Id.*, Exhibit B, Affidavit of Lisa Mena, sworn to Mar. 9, 1994 ("Mena Aff.")) Petitioner also postulates that Ms. Mena's testimony could potentially have affected the jury's verdict had either the prosecution or the defendant called her to testify at trial. (*Id.* at 4.)

In opposition, respondent urges the court to deny the petition for two reasons. First, respondent argues that petitioner's claim that the prosecution improperly postponed disclosure of Lisa Mena's identity is barred from federal habeas review, since the state court rejected the claim on procedural grounds. Second, respondent maintains that petitioner's claim of fraudulent misrepresentation is without merit. (Respondent's Memorandum of Law in Support of Affidavit in Opposition to Petition for a Writ of Habeas Corpus, dated Dec. 9, 1996 ("Resp't Mem."), at 1.)

### DISCUSSION

#### A. Statute of Limitations

The first line of inquiry is whether the petition is barred by the applicable statute of limitations.[9] On April 24, 1996, President Clinton signed into law the "Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA" or the "Act"), Pub.L. No. 104–32, tit. I, § 104 (1996), which imposes new restrictions on habeas corpus petitions. Section 101 of the Act amends 28 U.S.C. § 2244

to impose a one-year statute of limitations on habeas corpus petitions brought pursuant to 28 U.S.C. § 2254. Specifically, § 2244(d)(1) provides:

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The limitations provision also excludes from the one-year period the time during which a state collateral proceeding is pending. 28 U.S.C. § 2244(d)(2). The statute of limitations became effective on April 24, 1996, the date President Clinton signed the Act into law. *See Rosa v. Senkowski*, No. 97 Civ. 2468(RWS), 1997 WL 436484, at *2 (S.D.N.Y. Aug.1, 1997); *Duarte v. Hershberger*, 947 F.Supp. 146, 147–48 (D.N.J.1996).

In *Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the Su-

---

**9.** Petitioner must also satisfy certain jurisdictional requirements to invoke habeas corpus review. First, petitioner must be in custody pursuant to the judgment of a state court. 28 U.S.C. § 2254(a). The "custody" requirement is met if the petitioner is presently serving a sentence. *Hensley v. Municipal Court*, 411 U.S. 345, 350–53, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Petitioner has met this requirement because he is currently serving his prison sentence.

Second, petitioner must challenge the legality of his custody on the ground that it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition for a writ of habeas corpus will only be granted

where the error deprived petitioner of a fundamentally fair trial. *Blissett v. Lefevre*, 924 F.2d 434, 439 (2d Cir.) ("The relevant inquiry is whether the error, if there was one, deprived petitioner of a fundamentally fair trial"), *cert. denied*, 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991); *Moloi v. Riley*, 762 F.Supp. 36, 38 (E.D.N.Y.1991) ("A petition for a writ of habeas corpus shall only be granted ... when the state court has committed error which deprives Petitioner of a fundamentally fair trial"). Petitioner claims violations to his constitutional right to due process (Pet'r Mem. at 1–2) and thus raises proper issues for habeas review.

preme Court recently held that AEDPA's amendments do not apply retroactively to pending non-capital cases. Rather, the Court explained, the Act applies prospectively to "the general run of habeas cases only when those cases had been filed after the date of the Act." *Id.*, 117 S.Ct. at 2063. *See also Boria v. Keane*, 90 F.3d 36, 37–38 (2d Cir.1996) (per curiam), *cert. denied*, —— U.S. ——, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997). Here, Metts filed his petition on August 15, 1996, 113 days after the effective date of the Act. According to *Lindh*, AEDPA's provisions, including the new time limitations, presumptively apply to Metts's petition. Thus, to determine whether the petition is timely under the new provisions of the Act, the court must calculate one year from the latest of the dates provided for in § 2244(d).

As explained above, petitioner appealed the judgment of conviction against him to the Appellate Division, which found one of his claims unpreserved for appellate review and the remaining claims lacking in merit. (*Metts*, 184 A.D.2d 592, 584 N.Y.S.2d 644 (2d Dep't 1992)). The New York Court of Appeals then denied leave to appeal on August 14, 1992. *Metts*, 80 N.Y.2d 907, 602 N.E.2d 240, 588 N.Y.S.2d 832 (1992). The one-year time limit thus began to accrue on November 12, 1992, at the conclusion of the ninety days during which petitioner could have sought certiorari to the United States Supreme Court (*see* Rule 13 of the Rules of the Supreme Court of the United States; *Hughes v. Irvin*, 967 F.Supp. 775, 778 (E.D.N.Y.1997)), and ended on November 12, 1993.

On March 15, 1995, petitioner filed a collateral motion to vacate the judgment of conviction under section 440.10 of the New York Criminal Procedure Law, in which he presented all claims of prosecutorial misconduct raised in the instant petition.[10] Justice Juviler denied the motion by order dated August 10, 1995. Petitioner then sought leave to appeal to the Appellate Division, which de-nied the application by order dated November 22, 1995.[11] However, by the time petitioner filed the motion to vacate in March 1995, the one-year statute of limitations had already expired. The motion to vacate thus did not trigger § 2244(d)(2)'s tolling mechanism for collateral review motions.

Although the instant petition would ordinarily be time-barred under the express provisions of § 2244(d), the Second Circuit recently held that a state prisoner who files a habeas petition more than one year after the accrual date under the new limitations provision is entitled to a "reasonable time" after the effective date of AEDPA, not to exceed one year, to file what would otherwise be a time-barred petition. *Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir.1997). In *Peterson*, the Second Circuit concluded that a habeas petition filed eighteen years after the conclusion of state court review of the conviction, but only 72 days after the effective date of the Act, was timely. *Id.*

Although the Court of Appeals has instructed that there is "no need to accord a full year after the effective date of the AEDPA," the outer limits of the "reasonable period" have not been clearly established and must be determined on a case-by-case basis. *Id.* Courts in this circuit interpreting *Peterson* have consistently found petitions filed more than 300 days after the effective date of AEDPA barred by the one-year statute of limitations. *See, e.g., LaTorres v. Walker*, No. 97 Civ. 3392(SAS), 1997 WL 605105, at *2 (S.D.N.Y. Oct.1, 1997) (habeas petition filed 352 days after effective date of AEDPA held untimely); *Yeung v. Artuz*, No. 97 Civ. 3288(HB)(AJP), 1997 WL 572908, at *2 (S.D.N.Y. Sept. 10, 1997) (petition filed three days short of a year after enactment of AEDPA dismissed as untimely); Roldan v. Artuz, 976 F.Supp. 251, 253 (S.D.N.Y. 1997) (petition filed 328 days after AEDPA's enactment held untimely); *Fluellen v. Walker*, 975 F.Supp. 565, 566 (S.D.N.Y. 1997) (petition filed 346 days after enactment of AEDPA held untimely); *Joseph v. McGinnis*, No. 97

---

**10.** In his motion to vacate, petitioner presented an additional claim that the instructions to the jury did not cure the effect of Ms. Mena's availability. However, this claim is not raised in his habeas petition.

**11.** Pursuant to N.Y.Crim.P.L. § 450.15, a defendant may appeal from on order denying a motion to vacate a judgment only when the intermediate appellate court issues a certificate granting leave to appeal.

Civ. 2969(HB), 1997 WL 531312, at *2 (S.D.N.Y. Aug.27, 1997) (filing 364 days after AEDPA's effective date was not within a "reasonable time"); *Berger v. Relin,* 977 F.Supp. 243 (W.D.N.Y. 1997) (petition filed eight days short of a full year after effective date of AEDPA time barred); *Kirby v. Senkowski,* No. 97 Civ. 3329, 1997 WL 399663, at *1 (S.D.N.Y. July 15, 1997) (petition filed April 15, 1997 held untimely).

On the other hand, courts in this circuit have allowed grace periods of up to six months after AEDPA's enactment. *See, e.g., Rivalta v. Artuz,* No. 96 Civ. 8043, 1997 WL 401819, at *1 n. 1 (S.D.N.Y. July 16, 1997) (petition filed six months after enactment of AEDPA held timely); *Oppenheimer v. Kelly,* No. 97 Civ. 3035, 1997 WL 362216, at *1 (S.D.N.Y. June 27, 1997) (approximately four months may qualify as a reasonable period in view of the "pro se nature of [a] petitioner's representation"); *Valentine v. Senkowski,* 966 F.Supp. 239, 240–41 (S.D.N.Y.1997) (petition filed on August 15, 1996 was not time-barred due to "the *pro se* nature of the petitioner's representation"); *Ojeda v. Artuz,* No. 96 Civ. 5900(SAS), 1997 WL 283398, at *2 (S.D.N.Y. May 29, 1997) (in light of Second Circuit's decision in *Peterson,* court had "no trouble" finding that a filing 89 days after effective date of AEDPA was timely);

*Scire v. United States,* No. 96 Civ. 3446, 1997 WL 138991 at *5 (E.D.N.Y. Mar.24, 1997) (almost three months "falls within the 'reasonable time' exception to the limitations period suggested by the Second Circuit"). *But see Clarke v. United States,* 955 F.Supp. 593, 597 (E.D.Va.1997) ("To create a 'grace period' in which prisoners can file untimely suits under Section 2255 despite the AEDPA's reforms is simply to resist Congress's efforts 'to curb the abuse of the statutory writ of habeas corpus....'") (quoting H.R.Conf. Rep. 104518 (1996), *reprinted in* 1996 U.S.C.A.A.N. 944).

■ In light of the prevailing lenient construction afforded under AEDPA and the liberal treatment traditionally conferred by this circuit on pro se litigants, I find petitioner's submission of his application 113 days following the effective date of AEDPA to be within a "reasonable period." [12] I therefore respectfully recommend that the court decline to dismiss the petition on limitations grounds.[13]

### B. *Procedural Default Doctrine*

■ Respondent contends that plaintiff's claims are procedurally barred because the state courts' decisions rested on a state procedural default. (Resp't Mem. at 2.) [14] Un-

---

**12.** I am aware of a recent decision in the Southern District of New York denying a respondent's motion to dismiss an otherwise time-barred habeas corpus petition on the ground that the statute of limitations in 29 U.S.C. § 2244(d) violates the Suspension Clause of the United States Constitution. *See Rosa v. Senkowski,* No. 97 CIV. 2468(RWS), 1997 WL 436484, at *4 (S.D.N.Y. Aug.1, 1997). Because Metts's petition is not time-barred under *Peterson,* it is unnecessary for the court to reach that issue.

**13.** I note that the District Attorney's office did not raise the statute of limitations as an issue in its submissions opposing the petition. There is a dearth of case law discussing the question of whether the new limitations bar under AEDPA is jurisdictional, or is an affirmative defense that can be waived. However, the few courts that have addressed the issue have concluded that the one-year statute of limitations is an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure, and thus is waived if not raised in opposition to a habeas petition. *See, e.g., Samuel v. Duncan,* 92 F.3d 1194 (table), 1996 WL 413632, at *1 (9th Cir. July 22, 1996) ("the government has not raised the issue [of the statute of limitations under AEDPA], so we need not

consider it because the statute of limitations is not jurisdictional and can be waived"), *cert. denied,* —— U.S. ——, 117 S.Ct. 1338, 137 L.Ed.2d 497 (1997); *Andrews v. Johnson,* 976 F.Supp. 527, 529 (N.D.Tex. 1997) (because the Writ of Habeas Corpus is a right grounded in common law, and is not based on a statutory waiver of sovereign immunity, it constitutes an affirmative defense that is waived if not pled). Because Metts's petition is not time barred, it is unnecessary for the court to reach this issue.

**14.** Respondent does not raise non-exhaustion of state remedies as a defense with regard to the petition. Although the state's waiver of, or inadvertent failure to assert, the nonexhaustion defense does not bar the court from considering the issue of exhaustion (*Granberry v. Greer,* 481 U.S. 129, 131–32, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987)), amended section 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Because, as explained *infra,* I recommend that the court deny the petition on grounds of a procedural bar and on the merits, it is unnecessary to analyze the issue of

der the procedural default doctrine, federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rested on an independent and adequate state procedural default. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("This court will not review a question of federal law decided by a state court if the decision of that court is independent of the federal question and adequate to support the judgment"); *Wainwright v. Sykes,* 433 U.S. 72, 81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) ("As to the role of adequate and independent state grounds, it is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts"); *Epps v. Commissioner of Correctional Servs.,* 13 F.3d 615, 617 (2d Cir.) (no federal habeas review of decisions based on independent and adequate state grounds "[b]ecause of comity and federalism concerns and the requirement that States have the first opportunity to correct their own mistakes"), *cert. denied,* 511 U.S. 1023, 114 S.Ct. 1409, 128 L.Ed.2d 81 (1994). This rule applies regardless of whether the state law ground is substantive or procedural. *Coleman,* 501 U.S. at 729.

■■■ A state ground is "independent" only if the state court's reliance on a state rule alone was sufficient to justify its decision. *Id.* at 735. The court must presume that there is no independent state ground when the last state court's decision " 'fairly appears to rest primarily on federal law, or [is] interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.' " *Id.* (quoting *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)). A state ground is "adequate" if the state acts in a consistent and principled manner. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1990) ("only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim") (quoting *James v. Kentucky,* 466 U.S. 341, 348–51, 104 S.Ct. 1830, whether petitioner has exhausted his state reme-

80 L.Ed.2d 346 (1984)). *See also Barr v. City of Columbia,* 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964) (state procedural rules "not strictly or regularly followed" may not bar federal habeas review).

In his petition for habeas corpus, petitioner alleges two instances of prosecutorial misconduct. He asserts that the prosecution (1) improperly concealed Lisa Mena's address and telephone number and (2) fraudulently misrepresented that Ms. Mena would appear as a witness at trial. (Pet'r Mem. at 56.) For the reasons explained below, although petitioner's improper concealment claim is procedurally barred, his fraudulent representation claim is preserved for federal habeas review.

### 1. *Improper Concealment*

Petitioner contends that "[i]nitially, this prosecutor refused to release any useful information concerning the whereabouts of Lisa Mena ... [and] withheld the reports containing this information from the court." (Pet'r Mem. at 3.) He supports his claim with the police incident report proffered to defense counsel with the witness's name, address, and telephone number redacted. (*Id.,* Exhibits A1 and A2.)

As explained above, petitioner's counsel agreed to a jury instruction in which the court described Ms. Mena's statement to the police on the night of the alleged murder and took judicial notice that, had she appeared to testify, her testimony would have been consistent with her prior statement. *See* Trial Tr. at 608613. Counsel also consented to an instruction that Ms. Mena had failed to identify petitioner in a police line-up. *Id.*

On appeal, petitioner argued, *inter alia,* that the trial court violated his right to a fair trial by failing to conduct a hearing to determine whether Lisa Mena possessed exculpatory evidence. *See* Appellant's Memorandum of Law, dated December 3, 1990, at 56. The Appellate Division affirmed the judgment of conviction, finding unpreserved for appellate review petitioner's claim that the trial court should have conducted a hearing regarding Lisa Mena's testimony because petitioner dies.

had (1) failed to request a hearing to determine whether Ms. Mena would have provided exculpatory evidence, and (2) agreed to the jury instruction the court proposed concerning Ms. Mena's statement to the police. *See People v. Metts,* 184 A.D.2d 592, 592–93, 584 N.Y.S.2d 644 (2d Dep't 1992).

By letter dated June 22, 1992, petitioner sought leave to appeal to the Court of Appeals, again arguing that the trial court erred by failing to conduct a hearing to determine whether Lisa Mena possessed exculpatory evidence. The Court of Appeals denied the application. *People v. Metts,* 80 N.Y.2d 907, 588 N.Y.S.2d 832, 602 N.E.2d 240 (1992).

Petitioner later raised his claim that the prosecution had improperly concealed Lisa Mena's identity [15] on his motion to vacate his judgment of conviction. Justice Juviler denied the motion on the ground that defense counsel had consented to an "alternative sanction proposed by the court, in the form of an instruction to the jury describing Mena's observations at the crime scene and the fact that Mena had identified a man other than the defendant when she viewed a line-up that included the defendant." Aug. 10, 1995 Order at 2. The court found that petitioner had litigated his claim of improper concealment on direct appeal to the Appellate Division, which affirmed the judgment of conviction (Aug. 10, 1995 Order at 3), and that:

> [b]ecause the defendant failed to make facts supporting these claims appear on the record prior to the sentence and because such facts "could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review" on appeal defendant's motion must be summarily denied.

*Id.* (quoting N.Y.Crim.P.L. §§ 440.10(3)(a)) (citations omitted). Justice Juviler thus concluded that petitioner was procedurally barred from raising his improper concealment claim because he had consented to the court's proposed jury instruction and thus had not properly preserved his objection.

■ The Appellate Division denied leave to appeal. (Nov. 22, 1995 Order.) When a state appellate court silently affirms a lower court's finding that a claim is procedurally barred, federal habeas courts must presume that the appellate court's affirmance rested on state procedural grounds. *Epps,* 13 F.3d at 618; *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993). *See also Reyes v. Keane,* 118 F.3d 136, 138 (2d Cir.1997) (when "a procedural bar is among the grounds argued by the State on direct appeal, we construe an affirmance without opinion as resting on the procedural ground 'where there is no "good reason" to believe that the Appellate Division's silence reflects a decision on the merits' ") (quoting *Quirama,* 983 F.2d at 14); *Ylst v. Nunnemaker,* 501 U.S. 797, 798, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (when the "last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits").

■ Under New York law, a claim is preserved for appellate review only if the party claiming error raises the issue at trial. N.Y.Crim.P.L. § 470.05(2) (McKinney 1994) ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error"). *See also Reyes,* 118 F.3d at 138. ("[u]nder New York law, a defendant must object to an alleged error in a jury instruction before the trial court in order to preserve the issue for appeal"). Here, both the last state court to rule on Metts's direct appeal and the last state court to rule on his motion to vacate the judgment relied on this state procedural rule. Both courts rejected Metts's objections to the prosecution's failure to disclose Lisa Mena's name and address on the ground that he had consented to the court's jury instruction regarding Ms. Mena's potential testimony. Therefore, federal habeas review is barred on this claim.

■ Nonetheless, a federal court may address the merits of an otherwise procedurally

---

15. Petitioner argued in his motion to vacate his judgment of conviction that the witness's "identity" was improperly concealed, while in his petition for habeas corpus he argues that the witness's "address" and "telephone number" were improperly withheld. However, these pieces of information concerning Ms. Mena's "whereabouts" are constructively identical.

barred claim upon the petitioner's showing of cause for the default and resulting prejudice (*Gray v. J.D. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996); *Coleman*, 501 U.S. at 749–50 (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986))) or fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 864–65, 130 L.Ed.2d 808 (1995); *Coleman*, 501 U.S. at 750 (citing *Murray*, 477 U.S. at 495). *See also Reyes*, 118 F.3d at 138. I will address each of these issues in turn.

#### a. *Cause and Prejudice*

■ A petitioner may demonstrate cause for a procedural default by showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel ... or that 'some interference by state officials' made compliance impracticable ... [or that] the procedural default is the result of ineffective assistance of counsel" constitutes cause. *Bossett*, 41 F.3d at 829 (citing *Murray*, 477 U.S. at 488). *See also Coleman*, 501 U.S. at 753.

■ Ignorance or inadvertence will not constitute "cause." *See Murray*, 477 U.S. at 491. Instead, cause is shown if, due to interference by state officials or some other objective factor, defense counsel fails to raise a

constitutional issue "reasonably unknown" to him or her. *Amadeo v. Zant*, 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988) (cause shown because county officials concealed memorandum revealing district attorney's deliberate violation of jury selection rules) (citing *Reed v. Ross*, 468 U.S. 1, 14, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)). *See also Dobbs v. Zant*, 506 U.S. 357, 359, 113 S.Ct. 835, 122 L.Ed.2d 103 (1993) (state's "erroneous assertions that closing arguments had not been transcribed" constituted excuse for procedural default); *Parkus v. Delo*, 33 F.3d 933, 938 (8th Cir.1994) (petitioner had cause for failing to raise *Brady* claim in state court because petitioner's counsel relied on prosecutor's representation that relevant records and reports had been destroyed).

■ Here, petitioner does not attempt to demonstrate cause for his procedural default. He does not contend that the factual or legal basis for his present claim was not reasonably available to his attorney at trial. Nor does he argue that interference by state officials made it impracticable for him to object to the court's proposed jury instruction, or that the procedural default was the result of ineffective assistance of counsel. While it is undisputed that the prosecution did not provide information concerning Ms. Mena's "whereabouts," the prosecution had no duty under *Brady* to produce Ms. Mena's address and telephone number absent a court order.[16] Furthermore, even if the

16. Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the prosecution must provide defense counsel with evidence favorable to the accused where the evidence is material to either guilt or punishment. *See also* N.Y.Crim.P.L. § 240.20(1); *People v. Novoa*, 70 N.Y.2d 490, 522 N.Y.S.2d 504, 517 N.E.2d 219, 222, 223 (1987) ("it is incumbent upon the prosecutor ... to ensure that material evidence which is in its possession and is exculpatory in nature is turned over to the defendant"); *People v. Cwikla*, 46 N.Y.2d 434, 414 N.Y.S.2d 102, 386 N.E.2d 1070, 1073 (1979) ("It is fundamental that material evidence which is in the possession of the prosecution and which is exculpatory in nature must be turned over to the defendant in order to give meaning to the constitutional right to a fair trial"); *People v. Andre W.*, 44 N.Y.2d 179, 404 N.Y.S.2d 578, 375 N.E.2d 758, 762 (1978) ("if the evidence is of material importance to the defense on the question of guilt or innocence it should be disclosed").

While the prosecution must disclose the "existence" and "content" of *Brady* evidence prior to

trial, discovery of a prospective witness's name and address is within the discretion of the trial court. *See People v. Cuddy*, 210 A.D.2d 730, 620 N.Y.S.2d 557, 557–58 (3d Dep't 1994) (trial court did not abuse discretion by refusing to permit disclosure of identifying information concerning witnesses against defendant), *appeal denied*, 88 N.Y.2d 846, 644 N.Y.S.2d 692, 667 N.E.2d 342 (1996); *People v. Coleman*, 178 A.D.2d 842, 577 N.Y.S.2d 900, 903 (3d Dep't 1991) ("defendant does not have a constitutional or statutory right to pretrial disclosure of the identity of prosecution witnesses.... The discovery of witnesses rests in the trial court's discretion") (citing *People v. Lynch*, 23 N.Y.2d 262, 296 N.Y.S.2d 327, 244 N.E.2d 29, 35 (1968)); *People v. Miller*, 106 A.D.2d 787, 484 N.Y.S.2d 183, 184 (3d Dep't 1984) ("There is neither a

prosecution had a duty to produce such information, Ms. Mena's police statement alone was sufficient for petitioner to assess whether to object to the proposed jury instruction or otherwise register a protest. Unlike the state officials in *Dobbs* and *Parkus,* the prosecution did not act in a manner that impaired petitioner's ability to recognize a constitutional issue. Therefore, petitioner fails to demonstrate cause for his procedural default.

Even where a petitioner can show cause for a procedural default, he or she must also demonstrate prejudice. *Gray,* 116 S.Ct. at 2080; *Coleman,* 501 U.S. at 749–50. Petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). In his petition, Metts argues conclusorily that "[t]he prosecutor's interference with petitioner's right to locate, interview, and present Lisa Mena as a witness in this case was extremely prejudicial." (Pet'r Mem. at 6.) Nonetheless, on petitioner's motion to vacate the judgment of conviction, the trial judge held that Ms. Mena's affidavit revealed that she would have "no relevant testimony to provide." Aug. 10, 1995 Order at 4. The court found further that "[t]here is 'no probability that had such evidence been received at trial the verdict would have been more favorable to the defendant'" than the jury instruction regarding Ms. Mena's statement to the police. *Id.* (quoting N.Y.Crim. P.L. § 440.10(1)(g)).

In reviewing an application for a writ of habeas corpus, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). *See also Chapman v. Vanzandt,* No. 96 CIV. 6940(JGK), 1997 WL 375668, at *4 (S.D.N.Y. July 8, 1997) ("district court should presume that a determination of a factual issue by a state court is correct"); *Hughes,* 967 F.Supp. at 779 (state court's "factual determination ... entitled to a presumption of correctness"). Petitioner has the burden of rebutting the state court's factual holding by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). *See also Chapman,* 1997 WL 375668, at *4 ("petitioner has not presented any evidence to rebut the presumption of correctness of the state court's finding ... [that] there is no constitutional violation under Brady").

Petitioner fails to present any evidence to contradict, let alone rebut by clear and convincing evidence, the state court's factual finding that Ms. Mena's testimony was not relevant and would not have been more favorable to the defense than Justice Juviler's charge to the jury. Furthermore, petitioner fails to demonstrate that his inability to examine Ms. Mena on the witness stand "infect[ed] his trial with prejudice of constitutional dimensions." Accordingly, petitioner cannot meet his burden of demonstrating prejudice.

### b. *Fundamental Miscarriage of Justice*

The court may also excuse a procedural default, even without a showing of cause and prejudice, where a "fundamental miscarriage of justice" has resulted. *Coleman,* 501 U.S. at 750. The fundamental miscarriage of justice exception "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup,* 115 S.Ct. at 865.

Under the fundamental miscarriage of justice exception, petitioner must show through "new reliable evidence—whether it

---

constitutional nor statutory obligation mandating the pretrial disclosure of the identity of a prosecution witness"); *People v. Rahman,* 155 Misc.2d 60, 587 N.Y.S.2d 826, 831 (N.Y. County 1992) ("The prosecution fulfilled its obligation [under *Brady* ] when it revealed ·[the witness's] existence and the content of his information"), *rev'd on other grounds,* 208 A.D.2d 775, 617 N.Y.S.2d 493 (2d Dep't 1994). The prosecution has no duty to disclose a prospective witness's name or address prior to trial, absent a court order pursuant to

N.Y.Crim.P.L. § 240.40. *Rahman,* 587 N.Y.S.2d at 831 ("Discovery of [the witness's] identity ... could easily have been accomplished ·with an appropriate protective order"). *See also Andre W.,* 404 N.Y.S.2d 578, 375 N.E.2d at 762 ("the right of a defendant to discover a potentially material witness must be balanced against a founded fear that such discovery might lead to intimidation of the witness or the influencing of his testimony"). In the present case, petitioner requested no such order.

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 115 S.Ct. at 865–66. *See also McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (exception applies in a "narrow class of cases" where "a constitutional violation has caused the conviction of one innocent of the crime"); *Kuhlmann v. Wilson*, 477 U.S. 436, 454 n. 17, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (petitioner required to establish by a "fair probability that . . . the trier of the facts would have entertained a reasonable doubt of his guilt"); *Murray*, 477 U.S. at 495–96 (a fundamental miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). The exception "is available only where the petitioner can supplement his constitutional claim with 'a colorable showing of factual innocence.'" *Romero v. Senkowski*, 950 F.Supp. 573, 578 (S.D.N.Y.1996) (quoting *Kuhlmann*, 477 U.S. at 454). *See also Borrego v. United States*, 975 F.Supp. 520, 525 (S.D.N.Y. 1997) ("actual innocence" exception applies to non-capital cases only where petitioner demonstrates by clear and convincing evidence that he is innocent of the facts necessary to impose his sentence).

Petitioner claims that Lisa Mena's police report statements and post-trial affidavit constitute evidence of his innocence. (Pet'r Mem. at 7.) However, petitioner fails to present "new reliable evidence" of his innocence as required by *Schlup. See also Romero*, 950 F.Supp. at 578–79 (fundamental miscarriage of justice exception inapplicable where petitioner failed to present "new reliable evidence"). Ms. Mena's affidavit presents no direct evidence of petitioner's innocence; the affidavit merely states that Ms. Mena "could not see [the] faces" of the "black or hispanic" males at 121 Clermont Avenue the night of the incident (Mena Aff.), not that petitioner did not commit the crime. Therefore, petitioner presents no evidence that compels this court to conclude that this case is one of few where the convicted prisoner was "actually innocent" of the crime. Petitioner's improper concealment claim is thus procedurally barred from habeas review.

### 2. *Fraudulent Misrepresentation*

Petitioner also claims that the prosecution fraudulently misrepresented that Lisa Mena would be called to testify at trial. (Pet'r Mem. at 6.) He contends that the prosecution's representations that it had contacted Ms. Mena were "subterfuge on the part of the District Attorney's office" intended to prevent petitioner from calling the witness. (*Id.* at 2.) Respondent argues that petitioner's claim of fraudulent misrepresentation lacks merit because a state court's findings are presumptively correct, and the alleged misconduct "did not rise to the level of denying petitioner due process rights." (Resp't Mem. at 89.)

Justice Juviler heard petitioner's claim of fraudulent misrepresentation on petitioner's motion to vacate his judgment of conviction. The court held that "the isolated allegation contained within the affidavit that Ms. Mena was never contacted by a 'district attorney' and was not asked to testify at a hearing or trial is squarely contradicted by the record and is insufficient to support the defendant's claim that the judgment of conviction 'was procured by duress, misrepresentation, or fraud on the part of . . . a prosecutor.'" Aug. 10, 1995 Order at 4 (quoting N.Y.Crim.P.L. § 440.10(1)(b)). The Appellate Division denied leave to appeal. Nov. 22, 1995 Order. Because Justice Juviler's decision on petitioner's fraudulent misrepresentation claim was on the merits—and was not based on an independent and adequate state procedural default—this court may assume that the Appellate Division also affirmed on the merits. *See Epps*, 13 F.3d at 618 ("where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same around"). Since the last state court to address this issue denied the claim on the merits, it is not procedurally barred from federal habeas review. *See Coleman*, 501 U.S. at 740.

As discussed above, however, a factual finding made by a state court is presumptively correct unless petitioner rebuts the finding by clear and convincing evidence. 28 U.S.C.

§ 2254(e)(1). Therefore, the state court's finding that petitioner's fraudulent misrepresentation claim lacks factual merit is presumptively correct. Petitioner has the burden of rebutting this finding by clear and convincing evidence. *Id.*

The only evidence defendant provides to substantiate his claim of fraudulent misrepresentation by the prosecution is Lisa Mena's affidavit. As explained, Ms. Mena states in her affidavit that she was "never contacted by the police or district attorney ... to testify at any hearing or trial." (Mena Aff.) On petitioner's motion to vacate, Justice Juviler found that "the isolated allegation contained within the affidavit that Ms. Mena was never contacted by a 'district attorney' and was not asked to testify at a hearing or trial is squarely contradicted by the record." Aug. 10 Order at 4. Justice Juviler thus evaluated the credibility of the prosecution's in-court statements that it had contacted Ms. Mena (Trial Tr. at 505, 543, 568) and Ms. Mena's contradictory statement that the district attorney never contacted her. (*Id.*) The court then made a reasonable factual finding that Ms. Mena's out-of-court, hearsay affidavit was less reliable than the statements of a district attorney acting as an officer of the court. Moreover, in denying defense counsel's request for a missing witness charge at trial, the court found that the prosecution had provided sufficient evidence of Ms. Mena's unavailability. Petitioner fails to offer any evidence, let alone "clear and convincing" evidence, to rebut Justice Juviler's findings on this point.

However, even assuming, *arguendo*, that the prosecution misrepresented that it had contacted Ms. Mena and had arranged for her to appear as a witness at trial, petitioner's claim fails on the merits. The standard of review for a claim of prosecutorial misconduct is "whether the prosecutor engaged in 'egregious misconduct ... amount[ing] to a denial of constitutional due process.'" *Blissett*, 924 F.2d at 440 (quoting *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990)). *See also United States v. McCarthy*, 54 F.3d 51, 55 (2d Cir.), *cert. denied*, 516 U.S. 880, 116 S.Ct. 214, 133 L.Ed.2d 145 (1995); McEachin v. Ross, 951 F.Supp. 478,

481 (S.D.N.Y.1997). Prosecutorial misconduct "denies a defendant due process only when it is 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Id.* (quoting *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987)). Prosecutorial misconduct does not amount to a denial of the right to a fair trial unless petitioner shows a "reasonable probability" of a different result absent the alleged misconduct. *Cf. Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial'") (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

Petitioner argues that, by representing that it intended to call Ms. Mena, the prosecution "denied [him] due process of law and the right to present witnesses on his behalf at trial." (Pet'r Mem. at 2.) However, even assuming for the sake of argument that the prosecution did make misrepresentations to the court regarding Ms. Mena's unavailability, such misrepresentations did not prevent petitioner from calling Ms. Mena as a witness oil his own behalf. Petitioner had Ms. Mena's police statement and knew well in advance of the trial that Ms. Mena had failed to identify him in the police line-up. Petitioner could have pursued finding Ms. Mena himself, or requested a court order pursuant to N.Y.Crim.P.L. § 240.40 to compel the prosecution to release her address and telephone number. Furthermore, even if the alleged misrepresentation had in some way prevented petitioner from calling Ms. Mena on his own, as discussed above, Ms. Mena's affidavit reveals that she possessed no information that would have been more favorable to petitioner than the jury instruction regarding her potential testimony. Aside from petitioner's bare speculation that "[n]o one knows how Lisa Mena would have testified had the district attorney not made her unavailable" (*Id.*), petitioner proffers no facts to show a "reasonable probability" of a different outcome had the prosecution not made the alleged misrepresentation.[17] Ac-

---

17. Petitioner also suggests that when the "prose-

cutor inform[s] the court, and argue[s] to the

cordingly, petitioner fails to demonstrate a denial of his constitutional right to due process as required to grant his petition for habeas corpus on the merits.

## CONCLUSION

For the reasons stated above, the undersigned respectfully recommends that the petition for a writ of habeas corpus be denied.

Objections to this report and recommendation must be filed within ten (10) days, with a courtesy copy to Judge Raggi, in order to preserve appellate review. *See* 28 U.S.C. § 636(b)(1).

November 25, 1997.

jury, that the missing witness could have been called to corroborate the testimony of his witnesses," a denial of due process is implicated. (Pet'r Mem. at 910) However, the Assistant District Attorney did not argue to either the court or the jury that Ms. Mena "could have been called" to corroborate the testimony of other witnesses. Rather, the prosecutor argued on summation that Ms. Mena's statement to the police, which the court read to the jury, corroborated the testimony of Sandra Bridgette. Trial Tr. at 67. Since petitioner had consented to placing Ms. Mena's police statement in evidence, it was entirely proper for the government to attempt to use that statement to its strategic advantage.